23-6917
Phs lead

# IN THE FORTH
## CIRCUIT COURT OF MARYLAND

UMAR ADEYOLA,

    **Appellant,**

                             Civil Action No. TDC-22-0781

**Vs**

**MOHAMMED MOUBAREK
TOM GERA, UNITED STATES OF
AMERICA, SHITIZ SRIWASTAVA, AND
UNIVERSITY OF WEST VIRGINIA**
    **Appellees**

RECEIVED
2023 NOV 16 P 1:2
U.S. COURT OF APPEAL
FOURTH CIRCUIT

---

### APPELLANT'S INFORMAL BRIEF

### POINTS and AUTHORITY

This case is a civil rights action filed by a Prisoner under the Eighth Amendment under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. 1983. Plaintiff's pro se complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

---

### I.    PREFATORY STATEMENT

The Appellant Umar Adeyola is filing this Informal Brief against the order of the United States District Court District of Maryland. The trial court granted the Motion to Dismiss or in an Alternative, Motion for Summary Judgment of Appellees Mohammed Moubarek, Tom Gera, and the United States of America on September 08, 2023. The trial court granted the Motion to Dismiss of Appellees Dr. Shitiz Sriwastava and the University of West Virginia on March 22, 2022. The trial court erred in considering the relevant laws and the important facts of this case. The trial court did not give weightage to the relevant laws and case laws, and the facts supporting the Appellant's

legal claims. The Appellant requests before the Appellate Court to grant this Informal Brief, dismiss the Appellee's Motion to Dismiss and award the compensation as prayed in the Appellant's complaint.

## II.    BACKGROUND

Appellant Umar Adeyola, a former federal inmate at the Federal Correctional Institution in Cumberland, Maryland (FCI-Cumberland), has filed this civil action asserting claims under the Federal Tort Claims Act (FTCA), and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics.

On March 31, 2022, the Appellant filed the Complaint in this case in which he alleges;

1. A claim against the United States for the violation of FTCA, based on alleged negligence by Dr. Moubarek and Gera in providing or failing to provide medical care while he was incarcerated at FCI-Cumberland;

2. Claims against Dr. Moubarek and Gera under Bivens for the violation of the Eighth Amendment to the United States of Cruel and Unusual Punishment based on the allegation that the failure properly to treat his MS and other medical conditions constituted deliberate indifference to Appellant's serious medical needs;

3. Claims against the Bureau of Prisons (BOP) for failing to follow their regulations and procedures for handling administrative grievances and remedies is a violation of the Fourteenth Admendment due process guarrentees.

4. A claim against the University of West Virginia and Dr. Sriwastav for the violation of FTCA, based on alleged negligence by Appellees in providing or failing to provide medical

care while he was incarcerated at FCI-Cumberland;

5. Claims against the University of West Virginia and Dr. Sriwastav under Bivens for the violation of the Eight Amendment to the United States for Cruel and Unusual Punishment based on the allegation that Appellee's failure to properly treat his MS and other medical conditions constituted deliberate indifference to Appellant's serious medical needs;

6. Claims against the University of West Virginia and Dr. Sriwastav violated the applicable standard of care for Multiple Sclerosis, second, committed Medical Malpractice and abandonment of a patient by deviating from the standard of care by failing to provide analyzation of radiological files and report his findings to patient and referring primary care providers. Their failure to communicate created negligence that delayed diagnosis, treatment and they abandoned Appellant as a patient without due notice

## III. ISSUES IN THE APPEAL

In this Appeal there are the following Issues that the Appellate Court must decide to serve justice;

1. Trial Court erred framing a opinion on a disputed Material fact which was not resolved
   a. Trial Court erred in not addressing disputed facts in Docket 29 and Docket 46

2. Whether the Appellant exhaust the administrative remedies before filing the civil action in the court?

3. Does Tom Gera have absolute/statutory immunity against Bivens' claims?

4. Whether the University of West Virginia have sovereign immunity from suit in federal court in this case?

5. Whether UWV's sovereign immunity bar be asserted when Appellant has been notified from AGI that he can pursue damages from the insurance contract and be limited to the

extent of insurance coverage provided?

6. Whether the trial court lacks personal jurisdiction over Dr. Sriwastava?

7. Whether Trial Court erred in Summary Judgement because the court has not weighed and resolved disputed material facts challenging Defendants assertions?

## IV. STATEMENTS OF FACTS

The court should consider the following important facts that would help the Appellate Court to decide the aforesaid issues in this Appeal;

1. **On or about 1/02/2019,** Appellant was diagnosed with Primary Progressive Multiple Sclerosis by Dr. Balashov, neurologist with Rutgers University Multiple Sclerosis Center, New Jersey. **(Docket 29, Exhibit 201) and also (Exhibit 1).**

2. **On or about 10/06/2022,** Appellant identified genuine disputes of material facts within **Docket 29,** points 2-7 of Material Facts and Trial Court erred to hold an evidentiary hearing on the disputed items from University of West Virginia (UWV) who argued that I refused a MRI Spinal Lumbar. Appellant refused an invasive spinal tap that was not discussed **(Exhibit 2),** Trial court erred in using this disputed fact in their dismissal opinion. Appellant refused a spinal tap **(Exhibit 2.1)** and requested that physicians provide medical justification why previous brain, thoracic and cervical MRI's were not used or previous neurologists consulted, **(Exhibit 2.2).**

3. **On or about 10/06/2020,** Appellant identified genuine disputes of material facts within **Docket 46** from Dr. Moubarak who stated under penalty of perjury that BOP supplied

Appellate medical devices, Canadian Crutches and refused EMG and MRI evaluations, (**Exhibit 3**). BOP never scheduled return trips because they did not receive final approval. According to a Inmate Immediate Release report from 07/14/2020 there was

   a. **1)** a Pending UR Consultation request for Radiology with a target date of 07/09/2020 for MRI of Brain and Spine for confirmation of Multiple Sclerosis

   b. **2)** a pending scheduling for EMG of lower extremities with a target date of 04/06/2020 for worsening Multiple Sclerosis symptoms

   c. **3)** a pending Physical Therapy consultation with a target date of 04/15/2020 for worsening Multiple Sclerosis symptoms (**Exhibit 4**).

The trial court stated in its order that the Appellant did not file the FTCA administrative claim to the BOP. Appellees did not submit an affirmation from a coordinator of BOP's SENTRY computer database of administrative remedies submitted by Appellant at Cumberland Federal Prison Camp and FTCA administrative claim (Standard Form 95 submitted with BP 10.

4. **On or about 6/01/2019,** The Appellant submitted an administrative claim-BP 9 at Butner Low Security Correctional Facility, and they did not respond. Further, the Appellees failed to discharge their onus to prove the Appellant's failure to exhaust administrative relief.

5. **On or about 3/03/2020,** Appellant a 2rd BP 9 to Cumberland Satellite Prison Camp (CSP), regarding their failure to provide medical care to address an ongoing pain and a gradual, continuously worsening neurological condition. Appellee sent notification that they extended their time to respond to that BP 9, April 12, 2020. (**Exhibit 5**)

6. **On or about 3/12/2020,** Appellant sent a letter to his treating neurologist Dr. Shitiz

Sriwastava, that he was experiencing worsening neurological symptoms. Including weakness in extremities, extreme fatigue, gait, sight, memory problems and stabbing pains. It was sent through Certified Mail: 7008 0003 0945 3485 **(Exhibit 6)**. Appellees UWV and Sriwastava did not respond to his letter or address his worsening neurological conditions.

7. **On or about 3/16/2020**, in an abundance of caution, Appellant sent a 3nd BP 9 through certified mail, tracking number **7008 1830 0003 0945 3478. (Exhibit 7)** through USPS to CSP to Butner LCSI Federal Prison and delivered on March 16, 2020. The BP 9 was regarding their failure to provide medical treatment to the Appellant addressing his Multiple Sclerosis.

8. **On or about 7/15/2020**, The Appellant was granted compassionate release from prison because of Cumberland and Butner's failures to provide timely medical care on July 15, 2020. Judge Vilardo ruled that all administrative remedies requirements were exhausted but in an abundance of caution, Appellant **submitted a BP 10 to BOP Mid Atlantic after release from prison.**

9. **On or about April 21, 2020,** BOP Mid-Atlantic received Appellant's BP-10 for Appeal ID 1008775 for Butner's "Improper delay to providing Medical Care", certified USPS mail **# 7013 3020 0001 3096 4614**, reference email from **(Exhibit 7)** discussing it with BOP's Mid Atlantic Office on April 26, 2021. The Appellant attached a Standard Form 95 against Butner Low Security and Cumberland establishing the desire that claims against the United States under the Federal Tort Claims Act (FTCA) for personal injury claims.

10. **On or about 10/15/2020** October 15, 2020, BUX/Exec Assistant from BUX/Exec.Assistant~@bop.gov provided the Appellant a response to his BP 9 **(Exhibit 9)** which was submitted to Butner on or about August 2019 and March 16, 2020, through Cumberland Satellite Prison Camp. Prison officials responded to his BP 9 almost two hundred and eighty (280) days after his first BP 9, one hundred and sixty (160) days after his second BP 9, and over seven hundred and twenty (720) days since the BP 10 and Standard Form 95 were received.

11. **On or about 06/30/2020, Appellant** received a receipt of BP 10 filing regarding BOP's failure after release from custody from Compassionate Release **(Exhibit 17) from Mid Atlantic**, but they have not responded to my appeal or tort claims.

12. **On or about 04/26/2021,** Appellant, submitted a BP 11 to General Counsel for a response regarding submitted BP 9, and 10. Appellees did not respond to the Appellant's grievance which is a procedural default, **(Exhibit 8)**  According to Bureau of Prison Program Statement 1330.18, Prison Officials have 20 days to respond to a BP 9 and 30 days to a BP 10.

13. The U.S. Department of Justice Federal Bureau of Prisons FCI Cumberland failed to respond to the Appellant's claim. This is an undisputed and established fact that Administrative Remedies are considered exhausted when prison officials fail to respond to a properly filed grievance.

14. The Bureau Of Prisons response to Admin Remedy Number: 1008775-F1 was provided to me after Appellant requested a response on October 15, 2020 **(Exhibit 7)** was beyond

the extended response time BOP established of April 12, 2020 (Exhibit 5). Additionally BOP's failure to respond to Appellant's BP 10 and 11

15. Further, the Appellant exhausted the administrative remedies in relation to the motion for compassionate release.

---

### POINTS and AUTHORITY

This case is a civil rights action filed by a Prisoner under the Eighth Amendment under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. 1983. Plaintiff's pro se complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

---

## V. LEGAL ARGUMENTS

Now come to the legal arguments. The Appellant's informal brief should be granted based on the following legal grounds;

### A) The Appellant has exhausted the administrative remedies

The trial court stated in its order that the sentence court's ruling on the exhaustion of remedies as to the Appellant's motion for compassionate release is irrelevant to whether the separate FTCA exhaustion requirement was completed. Basically, the trial court has a stance that the Appellant exhausted the administrative remedies for the compassionate release and did not file a separate claim for administrative remedy. The trial court has erred on this important fact of this case. The Appellant filed the separate administrative remedy claim which alleged the same facts of this case with the same cause of actions and asked for compensation. The Appellant discussed it in detail in the aforementioned statements of facts but again for the legal argument the summary is as;

1. The Appellant submitted an administrative claim-BP 9 at Butner Correctional Facility and they did not respond. The Appellant then sent a 2ⁿᵈ BP 9 through certified mail through USPS that was delivered on March 16, 2020, from Cumberland Satellite Prison Camp to Butner LCSI Federal Prison, regarding their failure to provide medical treatment to the Appellant addressing his Multiple Sclerosis. This BP 9 was delivered on March 16, 2020, and sent by certified mail through USPS. The Appellant was granted compassionate release from prison because of Cumberland and Butner's failures to provide timely medical care on July 15, 2020. Judge Vilardo ruled that all administrative remedies requirements were exhausted but in an abundance of caution, **Appellant submitted a BP 10 to BOP Mid Atlantic after release from prison.** On April 21, 2020, BOP Mid-Atlantic received the Appellant's BP-10 for Appeal ID 1008775 for Butner's "Improper delay to providing Medical Care". The Appellant attached a Standard Form 95 against Butner LCSI and Cumberland Camp establishing the desire that claims against the United States under the Federal Tort Claims Act (FTCA) for personal injury begin.

2. On October 15, 2020, BUX/Exec Assistant from BUX/Exec.Assistant~@bop.gov provided the Appellant a response to his BP 9 which was submitted to Butner on or about August 2019 and March 16, 2020, through Cumberland Satellite Prison Camp. Prison officials responded to his BP 9 almost two hundred and eighty (280) days after his first BP 9, one hundred and sixty (160) days after his second BP 9, and over seven hundred and twenty (720) days since the BP 10 and Standard Form 95 were received.

3. On 04/26/2021 Appellant, submitted a BP 11 to General Counsel for a response regarding submitted BP 9, and 10. Appellees did not respond to the Appellant's grievance which is a procedural default. According to Bureau of Prison Program Statement 1330.18, Prison Officials have 20 days to respond to a BP 9, 30 days to a BP 10 and 40 days to respond to a BP 11

4. The U.S. Department of Justice Federal Bureau of Prisons FCI Cumberland failed to respond to the Appellant's claim. This is an undisputed and established fact that Administrative remedies are considered exhausted when prison officials fail to respond to a properly filed grievance.

5. The response of the U.S Department of Justice Federal Bureau of Prisons FCI Cumberland Admin Remedy Number: 1008775-F1 with a bold caption '**Request for Administrative Remedy**' establishes that the Appellant filed a claim for administrative remedy that was denied by the U.S Department of Justice Federal Bureau of Prisons FCI Cumberland.

Now come to the FTCA exhaustion requirements;

1.      The Trial Court erred when it held that Appellant had not sought administrative remedies before filing the action against Appellee under the Federal Tort Claims Act ("FTCA") and *Bivens*. It is not in dispute that when asserting claims under FTCA and *Bivens,* a Plaintiff must exhaust administrative remedies before seeking relief on that claim in federal court. *See McNeil v. United States*, 508 U.S. 106 (1993); *see also Kokotis v. U.S. Postal Service,* 223 F.3d 275, 278 (4th Cir. 2000); *Randall v. U.S.,* 95 F.3d 339 (4th Cir. 1996). This Court held in *Ahmed*

*v. United States*, 30 F.3d 514, 516-17 (4th Cir. 1994) that a claimant exhausts his administrative remedies by providing (1) a written statement "sufficiently describing the injury to enable the agency to begin its own investigation," and (2) "a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death". It follows; the court erred when it held that Appellant had not filed any administrative claim regarding the negligence and thus its conclusion that Appellant did not exhaust the administrative remedies was erroneous Appellant submitted an administrative claim-BP 9 at Butner Correctional Facility and they did not respond. Further, Appellees failed to discharge their onus to prove Appellant's failure to exhaust administrative relief.

The FTCA requires the exhaustion of administrative remedies before initiating suit. It provides, "An action shall not be instituted for money damages for the injury . . . unless the claimant shall first have presented the claim to the appropriate Federal agency" and that claim has been finally denied by that agency in writing. **28 U.S.C. § 2675.** As this is a jurisdictional requirement, it should be followed strictly. **<u>Roma v. United States</u>, 344 F.3d 352, 362 (3d Cir. 2003).** *BENDER v. HUD*, **Civil No. 09-5599 (RMB/KMW), at \*5 (D.N.J. Feb. 19, 2010)**

The Trial Court erred when it held that the Appellant had not sought administrative remedies before filing the action against the Appellee under the Federal Tort Claims Act ("FTCA") and *Bivens*. It is not in dispute that when asserting claims under FTCA and *Bivens*, a Plaintiff must exhaust administrative remedies before seeking relief on that claim in federal court. *See McNeil v. United States*, 508 U.S. 106 (1993); *see* also *Kokotis v. U.S. Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000); *Randall v. U.S.*, 95 F.3d 339 (4th Cir. 1996).

The major legal requirement of FTCA exhaustion is that the claim must first be filed before the appropriate federal agency. If the agency denies the claim, then the movant should use the legal right of Appeal and after that, the movant is legally entitled to file the complaint in the court.

In this case, it should be noted that the Appellant filed the BP9 two times, and it was the 'claim for the administrative remedies' based on the same allegations and facts of this case. The Appellant then filed the BP10 to BOP Mid Atlantic after release from prison and asked for administrative remedies against the negligence in medical care. This fact proves that the Appellant's claim of administrative remedies was not limited to the motion for compassionate release. After the denial of the administrative remedy claim, the Appellant filed the BP11 i.e. Appeal to the General Counsel to which they never responded within the due time, and after that, the Appellant filed the complaint in the court. It proves that the Appellant adopted the complete channel of the administrative remedy and after that reached the court to begin litigation process for compensation.

The important fact of this case can also be considered that the response of the U.S Department of Justice Federal Bureau of Prisons FCI Cumberland Admin Remedy Number: 1008775-F1 with a bold caption **'Request for Administrative Remedy'** establishes that the Appellant filed a claim for administrative remedy that was denied by the U.S Department of Justice Federal Bureau of Prisons FCI Cumberland.

The majority opinion correctly holds that the Plaintiffs exhausted their FTCA claims. That is because those claims are encompassed by the administrative claim—that is, they relate to the same

core set of facts. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) ("Under the federal system, the word 'claim' denotes the allegations that give rise to an enforceable right to relief." (internal quotation marks and brackets omitted)); *see also Khan v. United States*, 808 F.3d 1169, 1172–73 (7th Cir. 2015) ("All that must be specified [under 28 U.S.C. § 2675(a) ], therefore, is facts plus a demand for money; if those two things are specified, the claim encompasses any cause of action fairly implicit in the facts." *S.H. v. United States*, 853 F.3d 1056, 1064 (9th Cir. 2017).

In the light of these case laws, the court ruled that if the administrative claim has the same core set of facts compared to the complaint filed in the court, then it would be considered that the plaintiff exhausted the administrative remedy. In this case, the Appellant filed the administrative remedy claim and alleged negligence in medical care. Standard medical care in treating his MS and asking for compensation can be testified from Exhibit E. In this civil action, the Appellant has the same core set of facts so this also establishes that the Appellant has exhausted the administrative remedies.

Another important fact in this case is that, On 04/26/2021 Appellant, submitted a BP 11 to General Counsel for a response regarding submitted BP 9, and 10 and it was after the release of the Appellant from the prison. In this BP11, the Appellant alleged the same allegations and asked for the compensation of damages but the Appellees did not respond to the Appellant's grievance which is a procedural default.

**Administrative remedies are considered exhausted** when prison officials fail to timely respond

a properly filed grievance. **Boyd v. Corrections Corp. of America**, 380 F.3d 989, 996 (6th Cir. 2004) ("[A]dministrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."); **Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)**. "After the forms are logged, the BOP has up to 20 days to respond to a BP-9 form, up to 30 days to respond to a BP-10 form, and up to 40 days to respond to a BP-11 form. **28 C.F.R. § 542.18.**" *Abdur-Rahman v. Terrell***, 10-cv-3092 (DLI) (LB), at \*10 (E.D.N.Y. Sep. 25, 2012)**

In the light of the aforementioned case laws, BOP had 40 days to respond to BP 11 but the BOP did not file any response and then the Appellant filed the Complaint in March 2022. The Appellant filed the complaint after almost one year after filing the BP11. The Appellees failed to respond to BP so this is established that Administrative remedies are considered exhausted when prison officials fail to respond to a properly filed grievance. A correctional facility's grievance process is considered "unavailable" when an inmate's properly submitted grievance receives no response *Hernandez v. Dart*, **814 F.3d 836, 842-43 (7th Cir. 2016)**. A grievance is deemed filed once the inmate places it into the grievance box, regardless of when a Jail staff member review it.

The detailed legal arguments establish that the Appellant has exhausted the administrative remedies with the same facts and allegations that were not limited to the motion for compassionate release. The Appellant separately filed the claim for administrative remedy and even continued it after his release from prison, adopting the complete channel for the remedies but the Appellant's claim was denied, and no response was received against the appeal.

A correctional facility's grievance process is considered "unavailable" when an inmate's properly submitted grievance receives no response *Hernandez v. Dart*, 814 F.3d 836, 842-43 (7th Cir. 2016). A grievance is deemed filed once the inmate places it into the grievance box, regardless of when a Jail staff member review it.

Appellant therefore avers that the Trial Court's failure to conduct Pavey hearing and prepare a report and recommendation on exhaustion, amounts to procedural barriers and due process violations to the Courts obligation to construe all disputed and undisputed facts in the light most favorable to the plaintiff. See Schepers, <u>691 F.3d at 913</u>.

Statements of Material Fact with respect to each motion, the court is cognizant of its obligation to construe all disputed and undisputed facts in the light most favorable to the plaintiff. See Schepers, <u>691 F.3d at 913</u>. This is particularly true where the court contemplates ruling without the benefit of a Pavey evidentiary hearing, which is designed to resolve contested issues of fact surrounding exhaustion. See Hernandez v. Dart, <u>814 F.3d 836, 840</u> (7th Cir. 2016).

**B) Trial Court granted summary judgment without holding an evidentiary hearing on disputed material fact disputes.**

Appellant contends that the Trial Court erred in awarding summary judgment because Appellant offered evidence that Defendant misrepresented facts to frame a false impression as to care in their custody, Appellant's claimed refusal for care and lack of exhaustion of administrative remedies. Appellant detailed in **Docket 41** under Statement of Facts that Appellee made material misrepresentations and perjury under oath regarding medical equipment provided, physical

therapy sessions and EMG appointment treatment refusals. Evidence was supplied countering Appellee's material fact errors as exhibits under Docket 41.

If the Court determines that a material, disputed fact exists, the Court must hold an evidentiary hearing to resolve the dispute. Roberts v. Neal, 745 F.3d 232, 234 (7 Cir. 2014). In this action the court declined to hold ab evidentiary hearing even though the parties dispute Material facts

Accordingly, the Court should grant a summary judgement motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Tiernan, 923 F.2d at 1032. If there is a genuine dispute of material fact, the Court should hold an evidentiary hearing on the disputed issues. See Tiernan, 923 F.2d at 1031.

The trial court provided no legal justification why the material fact disputes provided in Docket 41 from Appellant were not afforded the legal relief of evidentiary hearing to determine the truth of facts. This action should be condemned by the Appellate Court, and it should be reversed.

### C) The University of West Virginia has no sovereign immunity in this case

The trial court stated in its order that the University of West Virginia is a state agency and did not waive the sovereign immunity so the court has no jurisdiction over UWV based on sovereign immunity. The trial erred in the relevant facts and laws in that the Appellee UWV did not assert this affirmative defense and also did not establish it before the court. The Appellee should assert this claim in its document and establish that it did not waive the sovereign immunity or protected

under the sovereign immunity. If an argument is not asserted in the court and the Appellee did not fulfil the requirement of burden of proof that how the court can give legal relief on it. This is ruled by the court that "the defendant bears the burden of demonstrating sovereign immunity, which is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)." *Medsense, LLC v. University Sys. of Maryland*, No. PWG-20-892, at *1 (D. Md. July 26, 2021)

The Forth District has previously held that, unlike ordinary matters of subject matter jurisdiction, a defendant invoking the defense of sovereign immunity bears the burden of demonstrating that the defense cloaks it with immunity. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014) ("Because a defendant otherwise protected by the Eleventh Amendment can waive its protection, it is, as a practical matter, structurally necessary to require the defendant to assert immunity. We, therefore, conclude that sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating.").

In light of the aforementioned case laws, this is established that the Appellee should assert the defense of sovereign immunity and then prove it by fulfilling the legal requirement of burden of proof. It should be proved by the Appellee that they are protected under sovereign immunity and sovereign immunity is not waived but it has never happened in this case. The trial court provided a legal defense in its order to the Appellee and provided the legal relief. This action should be condemned by the Appellate Court, and it should be reversed.

**D) The University of West Virginia's sovereign immunity should be waived in this case**

The trial court stated in its order that the University of West Virginia is a state agency and so the court has no jurisdiction over UWV and agents based on sovereign immunity and cannot be sued. The trial erred in the relevant facts and laws in that the Appellee's insurance company **AIG sent Appellant communication that Appellee had liability insurance limits of $1,664,000 and under per incident for this case covering general liability and negligence.** AIG has identified a general liability claim number under 5241795749 US with liability insurance limits of $1,664,000 and under per incident for this case covering general liability and negligence. Mr. Brett Hart is the adjuster for this claim and can be reached at 304-357-4611, **(Exhibit 10)**.

This applicable insurance coverage circumvents the State and Appellees' sovereign immunity protection.

Immunity will not apply to the state or its agency if "liability accruing from alleged negligent acts by the State is covered by the limits of the State's liability insurance coverage and not state funds." Parkulo v. West Virginia Bd. of Prob. & Parole, <u>483 S.E.2d 507, 514</u> (W. Va. 1996).

"Where liability insurance is present, the reasons for immunity completely disappear." Clark v. Dunn, <u>465 S.E.2d 374, 378</u> (W. Va. 1995) (internal quotation marks and citation omitted). The plaintiff would seek damages from the insurance contract and be limited to the extent of insurance coverage provided. See Krein, 2012 WL 2470015, at *8 (allowing negligent training claim against WVSP to continue when state not also sued because insurance limitations were asserted to eliminate sovereign immunity bar).

Coverage for such liability accruing from alleged negligent acts by the State and Appellee is covered by the limits of their liability insurance coverage and not state funds. Immunity is relaxed only to the extent of the liability insurance coverage. In the instant case, AIG notified Appellant of the existence of an insurance contract of limits of $1,664,000 or less and that that waives the defense of qualified immunity, "a plaintiff can only state a plausible claim against a state department if the claim seeks relief up to and under the limits of the state's insurance policy." B.E. v. Mount Hope High Sch., No. 2:11-CV-00679, 2012 WL 3580190, at *4 (S.D.W. Va. Aug. 17, 2012). The Appellant seeks damages from the insurance contract and be limited to the extent of insurance coverage provided.

**D-1 Appellee University of West Virginia sovereign immunity should be waived in this case should be waived because based upon a theory of respondeat superior or vicarious liability.**

First, Trial Court erred in dismissing University of West Virgia based upon a theory of respondeat superior or vicarious liability. Relying on the West Virginia Supreme Court of Appeals' decision in West Virginia Regional Jail and Correctional Authority v. A.B., 766 S.E.2d 751 (W. Va. 2014), UWV claims it is entitled to qualified immunity and thus cannot be held vicariously liable for the actions of its employee Appellee Dr. Sriwastava. UWA should be held responsible because the alleged conduct fell outside the scope of employment.

An officer who is "acting within the scope of his authority and is not covered by the provisions of W. Va. Code, 29-12A-1 et seq. is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known." A.B., 766 S.E.2d at 762 (quoting Syl., in part, State v. Chase

Securities, 188 W. Va. 356 S.E.2d 591 (1992)). Qualified immunity "may extend to protect the State against suit in contexts other than legislative, judicial, or executive policy-making settings" where an "officer intentionally inflicts an injury or acts completely outside his authority." Parkulo v. W. Virginia Bd. of Prob. & Parole, 483 S.E.2d 507, 522-23 (1996).

In A.B., the court held that where an "employee's conduct which properly gives rise to a cause of action is found to be within the scope of his authority or employment," the State is not entitled to qualified immunity and may "therefore be liable under the principles of respondeat superior." Id. at 765 (italics in original). Therefore, no immunity exists where "State actors violate clearly established rights while acting within the scope of their authority and/or employment." Id. On the other hand, when an employee's actions are determined to be "outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability." Id. at 767.

The question of whether an physician was acting within the scope of employment would be one of fact for a jury, but that where the facts are not disputed and a factfinder could not reasonably determine that an act was committed within the scope of employment, a court is not precluded from making this finding as a matter of law. Id. at 768. According to the West Virginia Supreme Court of Appeals, a court should look to the purpose of the act to make this determination. Id. If the act was directed by the employer, or "an ordinary and natural incident or result of" the directed act, then it should be considered to have been within the scope of employment. Id. (emphasis in original; internal quotations omitted).

An employee's conduct is within the scope of employment if it is: "(1) of the kind he is employed to perform; 2) occurs within the authorized time and space limits;

3) it is actuated, at least in part, <u>by a purpose to serve the master</u>, and; 4) if force is used, <u>the use of force is not unexpectable by the master</u>." <u>Id.</u> at 769 (emphasis in original; footnote omitted). However, conduct does not fall "within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." <u>Id.</u> (emphasis added in original; internal quotation marks omitted).

Applying the principles from <u>A.B.</u>, the trial court should address the question if Appellee Dr. Sriwastava was acting within the scope of their employment when he refused to analyze MRI files sent to him by the Bureau of Prisons and Tom Gera, his refusal to obtain medical records from previous neurologists, refusal to analyze medical records and provide analyzation findings with the Bureau of Prisons.

The court should hold that allegations that "plainly demonstrate activities that a reasonably prudent person would know violate clearly established laws and constitutional rights and are malicious and oppressive." <u>Id.</u> Further, that "no reasonable factfinder could conclude that the unjustified, purposefully, and delay and denial of medical care . . . could even remotely serve the purpose of the UWV. Thus, the court should conclude that the Dr. Sriwastava was not acting within the scope of his employment when the alleged acts occurred and, as a result, UWV should not be shielded from liability pursuant to its state immunity.

Appellant sent a certified letter to Appellee Dr. Sriwastava in an effort to have his needs meet which all have been an objectively insufficient response to that need. Subjective awareness of facts signaling that need is blatant in the fact that Appellant was suffering significant pain and neurological impairments from PPMS. The delay of treatment for obviously serious conditions

such as Appellant's can constitute deliberate indifference where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified. Appellant could possibly lose the ability to ever walk again if he dose not receive the proper after care. "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment is evident in Mr. Blands case here an objective standard and a subjective standard existence of chronic and substantial pain."

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.

'" Wood v, Housewright, <u>900 F.2d 1332</u>,1334 (9th Cir. 1990) (quoting Hutchinson v. United States, <u>838 F.2d 390, 394</u> (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096.
"

### E) Tom Gera has no absolute/statutory immunity in this case

The trial court stated in its order that a Biven Claim against prison doctors who were PHS personnel was barred by absolute immunity. The Appellate Court must consider it and can verify from the Appellant's legal claims that the Appellant filed the claims against Tom Gera in his personal/individual capacity and this is a precedent set that "the Supreme Court held in <u>Bivens</u> that federal employees or officers acting under the color of their authority may be held personally liable for violations of a person's constitutional rights" *Philippeaux v. U.S.*, **10 Civ. 6143 (NRB), at \*15 (S.D.N.Y. Sep. 27, 2011)**

Bivens authorizes suits for monetary damages against federal officials for constitutional violations, such as the Eighth Amendment violations that Enigwe asserts. Such suits are asserted against the defendants in their personal capacities and not against the defendants in their official capacities or against the United States. See FDIC v. Meyer, 510 U.S. 471, 485 (1994) Armstrong v. Sears, 33 F.3d 182, 185 (2d Cir. 1994) (noting Bivens allows suit against federal officials in personal but not official capacities) ENIGWE v. ZENK, No. 03-CV-854 (CBA), at *5 (E.D.N.Y. Sep. 15, 2006)

The aforementioned case laws proved that if the Federal Employees violate the constitutional rights of a person, then the federal employee can be sued in his individual/personal capacity. In this case, the Appellant is asking for monetary compensation against Tom Gera in his personal capacity, so he is not protected under the doctrine of qualified immunity and statutory immunity. The Appellant has the legal right to file suits for monetary damages against Tom Gera in his individual capacity for constitutional violations.

### F) The trial court has personal jurisdiction over the Appellee Dr. Sriwastava based on minimum contact with the forum state.

The trial court in its order stated that Dr. Sriwastava had no minimum contact with the forum state so the trial court has no personal jurisdiction over the Appellee Dr. Sriwastava. The Trial Court erred when it failed to consider minimum contracts when it held that it did not have personal jurisdiction over Dr. Sriwastava. Dr. Sriwastava had sufficient contacts in the State for the Court to have personal jurisdiction. The U.S. Supreme Court has previously held in *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 that the inquiry into the "minimum contacts" necessary to create specific jurisdiction focuses "on the relationship among the defendant, the forum, and the litigation." *See Walden v. Fiore,* 571 U.S. 277, 285 (2014) ("the

plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him".) It follows; that there was continuous and systematic affiliation with the state and specific personal jurisdiction in that there was a purposeful minimum contact in the forum state.

The inquiry into the "minimum contacts" necessary to create specific jurisdiction focuses "on the relationship among the defendant, the forum, and the litigation." **Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)**. In this circuit, the court employs the following three-part test to analyze whether a party has sufficient minimum contacts to be susceptible to personal jurisdiction: whether (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. **Pebble Beach Co., 453 F.3d at 1155 (citing Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000))**. The plaintiff has the burden of proving the first two prongs. **CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011)**. If the plaintiff does so, the burden then shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." **Id.** (quoting **Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985))**. *N. Sister Publ'g, Inc. v. Schefren*, No. 6:14-cv-01395-TC, at *7 (D. Or. Apr. 6, 2015)

In the light of the aforementioned case laws to prove the minimum contact with the forum state the Appellant has the burden of proof to prove two conditions and the Appellee will prove the third

one. The two conditions are the following;

1. The defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum

2. The claim arises out of or results from the defendant's forum-related activities

In this case, the Appellee Dr. Sriwastava purposefully availed himself of the privilege of conducting activities in the forum state. The Appellee Dr. Sriwastava as an employee of the University of West Virginia purposefully availed himself of the medical treatment. The Appellee Dr. Sriwastava purposefully provided the medical treatment to the Appellant and was connected with the Appellant's care provider at FCI. The Appellee Dr. Sriwastava and the Appellant's care provider at FCI were connected with each other, shared the medical treatment history and coordinated continued medical treatment / further action with each other.

3. **On 12/02/2019,** FCI Cumberland authorized a New Consultation Request for evaluation by a Neurologist regarding Multiple Sclerosis and options for disease modifying treatment **(Exhibit 11)** on third page under ne consultation request ordered by Drs. Janjua and Amir

4. **On or about 01/09/2020** Alyssa Kathleen Martin from UWV received medical records from FCI Cumberland for Appellant **(Exhibit 18)** medical records from Robet Woods Hospital's assessment from their neurologist's findings of likely multiple sclerosis in

04/03/2017.

5.  On 01/27/2020 Appellant was sent to UWV and Dr. Sriwastava was the physician assigned
    to provide neurological evaluation and treatment planning. Dr. Sriwastava was provided
    with records from Robert Woods Hospital sent by FCI Cumberland regarding his MS initial
    diagnosis. Appellant also signed release of medical records form so Dr. Sriwastava could
    obtain a full diagnosis of Primary progressive Multiple Sclerosis **(Exhibit 12)**

6.  **On or about 2/04/2020,** Tom Gera PA-C entered an Administrative Note in Appellant's
    medical records that Dr. Sriwastava requested spinal tap under fluoroscopic guidance for
    MS CSP protenin and cell count and olig0clonal bands and IgG Index **(Exhibit 13).**

7.  **On or about 03/09/2020,** Tom Gera entered a consultation requesting an offsite
    Neurological appointment for EMG of lower extremities per the request of previously
    consulted Neurologist/ Dr. Sriwastava **(Docket**

8.  **On or about 03/11/2020,** Appellant refused spinal tap and requested that he see CD before
    test **(Exhibit 2.1)**

9.  **On or about 04/15/2020,** Tom Gera spoke with Dr. Sriwastava who requested that a repeat
    MRI "despite review of Prior MRIs before a diagnosis of MS being given to patient
    **(Exhibit 14)**

10. **On or about 07/02/2020,** Tom Gera called Dr. Sriwastava to see if he had reviewed the
    2nd set of Appellants MRIs and left voice message requesting that he provide a clinical

analysis of radiological files received through certified mail **(Exhibit 15)**

This established that Dr. Sriwastava was in contact with the forum state with the doctors of FCI and then accordingly provided the medical treatment to the Appellant at the University of West Virginia. Second, the Appellant's claims arise out of negligence in the provided medical treatment by the Appellee Dr. Sriwastava so in this case this is established that the Appellee Dr. Sriwastava has the minimum contact with the forum state.

### G) The trial court has personal jurisdiction over the Appellee Dr. Sriwastava based on Deliberate Indifference.

Deliberate indifference contains both an objective and subjective component: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. "If a person should have been aware of the risk, but was not," then the standard of deliberate indifference is not satisfied "no matter how severe the risk." Gibson, 290 F.3d at 1188 (citing Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001)). Plaintiffs "need not show that a prison official acted or failed to act believing that harm actually would befall on inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

"The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or 'an inadvertent failure to provide adequate medical care.'" Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) (quoting Estelle, 429 U.S. at 105-06).

## POINTS and AUTHORITY

This case is a civil rights action filed by a Prisoner under the Eighth Amendment under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. 1983. Plaintiff's pro se complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez,504 U.S. 25, 33 (1992).

Appellee Dr. Sriwastava was provided objective medical records documenting likely MS findings and signed release of medical records for Dr. Balashov and Quraishi regarding their diagnosis of Multiple Sclerosis and there is no documentation on records that they were contacted. Generally, defendants are "deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Further, a mere delay in receiving medical treatment, without more, does not constitute "deliberate indifference," unless the plaintiff can show that the delay caused serious harm to the plaintiff. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

Appellees collectively deviated from the standard of care with neurological procedures and committed medical malpractice arising from Abandonment, negligently failing to properly conduct surveillance and provide disease modifying therapy to stop MS progression proximately caused Appellant to suffer injuries and damages.

Appellant received an MRI analysis **on or about 10/28/2020** after being released from custody and discovered that the delay in treatment and surveillance a new right paracentral disk protrusion at L3-L4 on right L4 nerve root in the Lumbar multiple lesions within the white matter and lesion demonstrating enhancement consistent with acute demyelinating plaques. **(Exhibit 19).**

## VI.  CONCLUSION

The detailed statements of facts and legal arguments of this informal brief established and proved that the Appellant exhausted the administrative remedies before filing the civil action in court. The Appellant filed BP9, BP10, and BP11, adopted the complete channel of a claim for administrative remedies but the Appellant's claim was denied, and the Appellee did not file a response to BP11 within the due time. Further, it also established that the Appellant's claim for administrative remedy was not only for the motion for compassionate release. The Appellant separately filed the claim for administrative remedy and asked for compensation based on the same facts and allegations. The Appellant continued to ask for the administrative remedy even after his release. Further, it also established that Appellee Tom Gera has no absolute/statutory immunity against Bivens' claim because the Appellant asserted the Biven claims against Tom Gera's personal capacity. This is also established in this case that the University of West Virginia has no sovereign immunity from suit in federal court in this case and the trial court has the personal jurisdiction over Dr. Sriwastava.

## VII.  PRAYER FOR RELIEF

The Appellants pray before the Appellate Court that;

1.  Grant this Appellant's informal brief

2. Reverse the trial court's order of September 08, 2023, and March 22, 2022

3. Award the compensation to the Appellant for compensatory damage of One Thousand Dollars ($1,000.00) per day that which damage started, up until such in such date, Fifty Thousand Dollars for 8th Amendment violation of Cruel and Unusual Punishment and One Thousand Dollars ($1,000.00) per day for the 14 Amendment for Due Process violations per each defendant and supplement the relief sought for pain and suffering.

4. Any other relief that the court deems proper for the Appellant.

## POINTS and AUTHORITY

This case is a civil rights action filed by a Prisoner under the Eighth Amendment under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. 1983. Plaintiff's pro se complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez,504 U.S. 25, 33 (1992).

Respectfully Submitted By,

Umar Adeyola,

Pro se Litigant.

Date: 11/11/2023

# Exhibit 1

6/29/2020  10:54 PM  FROM: Staples                    TO: +13017841018    P.  3

## The Robert Wood Johnson Medical School
125 Paterson Street Clinical Academic Building  New Brunswick, NJ 08903
Fax:

*May 20, 2020*
*Page 1*
*Office Visit*

**UMAR A ADEYOLA**   11261 -055    **FCI CUMBERLAND**
50 Years Old Male -DOB: 01/09/1970 RWJ MRN: 5667538     Ins: HORIZON (1066)
Home: (716)260-8803

**01/02/2019 - Office Visit: RPV_PPMS**
**Provider: Konstantin Balashov MD**
**Location of Care: RWJ-Neurology**

nausea

**Visit Type:** Follow-up Visit

**CC:** follow up for ms.
This is a follow up for a patient suspected to have PPMS and spinal cord compression.

1.As per the Pt, he has been seen by two neurosurgeons for suspected spinal cord compression. They did not advise to proceed with any intervention.

2 His blood tests for MS mimics were negative. The Pt can be diagnosed with PPMS.
We had a long discussion on DMT for PPMS ( ocrelizumab and high dose biotin). The Pt was not interested in ocrelizumab but agreed to try biotin ( 100 mg PO TID, OTC).

3. The Pt c/o low back pain (mostly on the right side) which is getting worse when he bends forward. t started approximately 6 months ago. His straight leg rising test was positive on the right side for pain induced at 30 degree( negative on the left side)
The Pt is on Gabapentin 300 TID for neuropathic pain ( he was not able to tolerate a high dose). It does work only partially.
He was taking tramadol prescribed by another physician in the past.
We will try cymbalta for neuropathic pain.
the indication and the potential adverse effects of the medication including but not limited to dizziness and nausea were discussed. the Pt indicated that this was well understood. the alternative treatments were discussed. the Pt was given the opportunity to ask questions.

He is on baclofen for leg spasticity.

**From old notes:**
HPI: In January 2017, the Pt noted leg weakness and started to use a cane.
His vision started to worser 6-7 months ago. He has not seen an ophthalmologist yet.
5-6 months ago, he developed increasing frequency of urination
Two months ago, the Pt had a fall. The Pt went to the ER (Hamilton). Brain and C-spine MRIs revealed demyelinating lesions.
The Pt c/o fatigue that started 2-3 months ago.
As per the Pt all his symptoms are slowly getting worse and are not improving

He is on Gabapentin 300 mg PO TID for neuropathic pain in legs.
He is on baclofen 10 mg PO TID for leg spasticity.,
As per the patient's request, I increased the dose of these medications
the indication and the potential adverse effects of the medication including but not limited to suicidal risk and drowsiness were discussed  the Pt indicated that this was well understood. the alternative treatments were discussed  the Pt given the opportunity to ask questions.
Incoming Medications (prior to this update):
NAPROSYN 500 MG ORAL TABLET (NAPROXEN) 1 time daily, Route: ORAL
GABAPENTIN 300 MG ORAL CAPSULE (GABAPENTIN) 2 tabs po TID; Route: ORAL
* METHOCARBAMOL Dose unknown  Route: ORAL
* MELOXICAM Dose unknown; Route: ORAL
BACLOFEN 20 MG ORAL TABLET (BACLOFEN) One tab PO TID; Route: ORAL

Thomas Gera___ C
FCI Cumberland

TC
6/30/20

6/29/2020  10:54 PM  FROM: Staples          TO: +13017841018    P.  4

**The Robert Wood Johnson Medical School**                    *May 20, 2020*
125 Paterson Street Clinical Academic Building  New Brunswick, NJ 08903          Page 2
 Fax:                                                          Office Visit

**UMAR A ADEYOLA**                                    Home: (716)260-8803
50 Years Old Male -DOB: 01/09/1970 RWJ MRN: 5667538     Ins: HORIZON  (1066)

TRAMADOL HCL 50 MG ORAL TABLET (TRAMADOL HCL) PRN; Route: ORAL
PREDNISONE 10 MG ORAL TABLET (PREDNISONE) PRN; Route: ORAL

**Medications removed:**
NAPROSYN 500 MG ORAL TABLET (NAPROXEN) 1 time daily: Route: ORAL
* METHOCARBAMOL Dose unknown; Route: ORAL
* MELOXICAM Dose unknown; Route: ORAL
TRAMADOL HCL 50 MG ORAL TABLET (TRAMADOL HCL) PRN; Route: ORAL

**Medications added:**
CYMBALTA 60 MG ORAL CAPSULE DELAYED RELEASE PARTICLES (DULOXETINE HCL) one cap
po daily; Route: ORAL

Medications reviewed by: Konstantin Balashov MD

**Current Medication Allergies:** None known.

'No known med allergies' noted by: Konstantin Balashov MD

**Vital Signs:**

Height:        70 inches
Weight:        190.8 pounds
BMI:           27.48 kg/m^2
The patient was given a follow-up plan for weight reduction.
BSA:           2 05 m^2
Pulse rate:    82 / minute
Pulse rhythm:  regular

1st BP reading: 116/80 mm Hg (R. arm sitting)
Cuff size: large
Vitals Entered By: Annie Gonzalez MSA (January 2, 2019 8:43 AM)

**Smoking Status:** Never
**E-cigarette use:** Never

**Pain Scale**
**Patient reports pain:** yes
Location: back
Intensity: 9
Type: sharp

6/29/2020  10:54 PM  FROM: Staples                TO: +13017841018    P.  5

## The Robert Wood Johnson Medical School
125 Paterson Street Clinical Academic Building  New Brunswick, NJ 08903
Fax:

May 20, 2020
Page 3
Office Visit

### UMAR A ADEYOLA
50 Years Old Male -DOB 01/09/1970 RWJ MRN: 5667538    Ins: HORIZON (1066)

Home: (716)260-8803

**Fatigue**
Patient experiencing fatigue: yes
Fatigue Level: 7

**Fall Risk**
Patient reports they have fallen more than once in the past year.
Patient reports they have not fallen nor were they hurt in the past year.

**Preferred Method of Learning**
Patient learns best by: Demonstration by provider or staff, Hearing an Explanation, Reading a Handout

**Medications:**
CYMBALTA 60 MG ORAL CAPSULE DELAYED RELEASE PARTICLES (DULOXETINE HCL) one cap
po daily #90[Capsule] x 3
    Route:ORAL
    Entered and Authorized by:    Konstantin Balashov MD
    Signed by:    Konstantin Balashov MD on 01/02/2019
    Method used:    Electronically to
        CVS/pharmacy #0432* (retail)
        350 ROUTE 130
        EAST WINDSOR, NJ  08520
        Ph: 6094435100
        Fax: 6094430806
    Note to Pharmacy: Route: ORAL,
    RxID:   1862041857183440

General: Well developed, no acute distress.
HEENT: Neck supple
NEURO EXAM
MS: A+O x3 times, Good cognition and comprehension. Good memory recall in 5 minutes ( 3/3).
Satisfactory language,knowledge and attention. Normal naming and vocabulary.
CN:Visual fields are normal. EOM is full. PERRLA CN5 is decreased sensation to PP and temp on the left
side. CN7 motor is symmetric. Hearing is functional. TUFML. Shoulder shrug is normal.
Motor: Motor strength is 5-/5 in right UE and 4/5 in the left UE. It was 3/5 in both iliopsoas muscles. AT
was 3/5 on the right and 4/5 on the left side. Increased tone in LE.
Sensation: decreased sensation to PP and temp on the right side. Good symmetric response to vibration
in all limbs.
Coordination: mils ataxia on finger to nose test on the left side. Borderline Romberg sign.
Gait: ambulates with a cane. Spastic gait. Right foot drop.

Brain , C-, and T-spine MRIs with and without contrast were done on 7/14/18 and 7/16/18. I personally
reviewed and analysed selected images after the patient's visit. There were multiple lesions in
periventricular areas. Some lesions had so called "Dawson Finger" appearance. There were infratentorial
lesions. There was mild-moderate brain atrophy noted. There were multiple lesions in the C- and T-spine.
At least one lesion (at C2 level on the left side) was contrast-enhancing.
Severe central canal stenosis with possible spinal cord compression (mostly on the left side) was noted at

6/29/2020  10:54 PM  FROM: Staples          TO: +13017841018    P.  6

**The Robert Wood Johnson Medical School**                    *May 20, 2020*
125 Paterson Street Clinical Academic Building  New Brunswick, NJ 08903          Page 4
 Fax:                                                        Office Visit

**UMAR A ADEYOLA**                                    Home: (716)260-8803
50 Years Old Male -DOB: 01/09/1970 RWJ MRN: 5667538    Ins: HORIZON (1066)

around C5- level.

vit D 25 OH: was  18.8 (25.0- 80.0) on the hospital.. The Pt is on vit D suppl at this time

L-S spine MRI on 7/16: "minimal DDD" as per the official report.

## Impression & Recommendations:

**Problem # 1:** MULTIPLE SCLEROSIS (ICD-340) (ICD10-G35)
PPMS
His main problem is leg weakness.
The Pt decided to try high dose biotin. he is not interested on ocrelizumab at this time.
Neurosurgery decided to wait with intervention for suspected cervical spinal cord compression.
He will try cymbalta for neuropathic pain in the left arm  and low back pain
We will send a referral to our rehab department (Dr Rossi)
Orders:
MR THORACIC SPINE WITHOUT AND WITH CONTRAST (CPT-72157) (72157)
Ov Level 5 Comprehensive (Est) (99215)

**Problem # 2:** LOWER BACK PAIN (ICD-724.2) (ICD10-M54.5)
Duration: over 6 months and getting worse. Resistant to gabapentin.
We will try cymbalta. L-S spine MRI was ordered.
Orders:
MRI, LUMBAR SPINE WITHOUT CONTRAST (72148)

Orders:
MR LUMBAR SPINE WITHOUT CONTRAST (CPT-72148) (72148)

**Medications Added to Medication List This Visit:**
1) Cymbalta 60 Mg Oral Capsule Delayed Release Particles (Duloxetine hcl) .... One cap po daily

**Patient Instructions**
(Handout Printed)
1) Please follow recommendations you received.
2) Please contact us if you noted new or increasing neurological symptoms: a) Susan Gabriel. Multiple
Sclerosis Center Office (Workdays, 8 am to 4 pm): 732-235-8593; b) Yaritza Rosario, Multiple Sclerosis
Center Nurse Practitioner (Mon, Tue, Thursday, 9 am to 3 pm): 732-235-7099; c) Neurology resident on
call pager (at any time): 732-206-3673 (please call this number and enter your call back phone number
after the beep).
3) Please see a rehab physician.

Due to complexity of this case, I have spent a total of 40 minutes with the patient of which more than 30
minutes were spent in counseling the patient on MS. We had a long discussion related to patient's clinical
symptoms and the plan of the care. The above note was signed but not verified for spelling and

6/29/2020  10:54 PM  FROM: Staples            TO: +13017841018    p. 7

**The Robert Wood Johnson Medical School**                    *May 20, 2020*
125 Paterson Street Clinical Academic Building  New Brunswick, NJ 08903            Page 5
 Fax:                                                    Office Visit

**UMAR A ADEYOLA**                                    Home: (716)260-8803
50 Years Old Male ·DOB: 01/09/1970 RWJ MRN: 5667538    Ins: HORIZON  (1068)

grammatical correctness. I appreciate the opportunity to participate in the medical care of this nice patient.


**Electronically Signed by Konstantin Balashov MD on 01/02/2019 at 10:19 AM**

## Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M | | Race: | BLACK |
| Scanned Date: | 07/07/2020 13:49 EST | | | | Facility: | CUM |

**Reviewed by Moubarek, Mohamed S. MD, CD on 07/20/2020 17:44.**

# Exhibit 2

## BACKGROUND

The defendant WVU filed the motion to dismiss on 21st September 2021 and submitted the facts that the plaintiff filed an amended complaint on 31st August 2022 without seeking the court's leave. The docket of the case is attached as **Exhibit 200** with this opposition, the court can confirm that the plaintiff did not file any type of legal document on 31st August 2022. The defendant did misrepresentation in their motion with bad faith so the court should dismiss their motion to dismiss on this legal ground and impose sanction against the defendant.

The defendant WVU made the following legal grounds in the favor of their motion to dismiss;

    **1:** The Complaint should be dismissed against Defendant WVU because Defendant WVU cannot be sued in Maryland without its consent which has not been granted in this matter

    **2:** The Complaint should be dismissed against Defendant WVU because this Court does not have personal jurisdiction over it.

    **3:** The Complaint should be dismissed against Defendant WVU, as the claims are untimely under the statute of limitations.

## STATEMENTS OF FACTS

The defendant in his motion to dismiss argued that the plaintiff was ordered to undergo MRI Spine Lumbar before to diagnose Multiple Sclerosis (MS) but the plaintiff refused to do so and signed

2

OPPOSITION TO DEFENDANT WEST VIRGINIA UNIVERSITY'S MOTION TO DISMISS

an acknowledgment. This is not true; the defendant's employee Dr Sriwastava adopted the delayed tactics and delayed the medical treatment of the plaintiff. It was the legal and professional duty of the defendant's employee to properly analyze the medical history of the plaintiff and then take the appropriate medical action but the defendant failed to fulfill his legal and professional duty. On 1/2/2019 Dr. Balashov made a clinical determination that Plaintiff suffered from Primary Progressive Multiple Sclerosis, a chronic inflammatory disease that causes extreme pain in the legs, feet back, and muscle spasms **(Exhibit 201)**. The court should review the exhibit and confirm these facts that the plaintiff was suffering from PPMS before to visit the defendant's employee Dr. Sriwastava.

On 12/27/2020 during the visit to the defendant the Plaintiff informed the defendant's employee Dr. Sriwastava that he was diagnosed with Primary Progressive Multiple Sclerosis (PPMS) in 2019 by Dr. Balashov, was in significant pain, had difficulty seeing things, and difficulty walking. The defendant's employee Dr. Sriwastava informed Plaintiff that he did not believe that he had PPMS because it was a rare diagnosis. Plaintiff signed releases of medical information requests with Dr. Srivastava because he needed records from Drs. Balashov and Qureshi to confirm the diagnosis, and MRI imaging of the brain and spine, **(Exhibit 202)**.

But unfortunately, the defendant's employee Dr. Sriwastava failed to confirm from Drs. Balashov and Qureshi about the plaintiff's medical condition of PPMS. The defendant's employee even did not file any consultation request or request of medical history of the plaintiff to Drs. Balashov and Qureshi.

3

OPPOSITION TO DEFENDANT WEST VIRGINIA UNIVERSITY'S MOTION TO DISMISS

# Exhibit 2.1

BP-S358.060
SEP 05

# MEDICAL TREATMENT REFUSAL

CDFRM

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

3-11-2020
Date

I, UMAR ADEYOLA                    11261-055    , refuse treatment recommended by the Federal Bureau of Prisons Medical staff for the following condition(s):

**DESCRIBE CONDITION IN LAYMAN'S TERMINOLOGY:**

Testing needed to make formal diagnosis of Multiple Sclerosis.

**The following treatment(s) was/were recommended:**

Spinal tap.

**Federal Bureau of Prisons Medical staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment:**

Unable to make formal diagnosis of MS based on need of further testing may result in worsening of condition.

I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment. I hereby assume all responsibility for my physical and/or mental condition, and release the Bureau of Prisons and its employees from any and all liability for respecting and following my expressed wishes and directions.

HALL, LISA V. RN, IOP/IDC     3-11-2020
Counseled by            Date

_____     3-11-20
Patient's Signature     Date

_____     3-1-20
Signature of Witness     Date

CUM--CUMBERLAND FCI

# Bureau of Prisons
# Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M    Race: BLACK | Facility: | CUM |
| Note Date: | 03/11/2020 13:46 | Provider: | Hall, Lisa V. RN, IOP/IDC | Unit: | P01 |

Admin Note - General Administrative Note encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE 1**          **Provider:** Hall, Lisa V. RN, IOP/IDC

Inmate refused treatment upon arrival at outside Radiology Dept today for spinal tap.
Reports he was told he would see CD for discussion prior to this test and did not wish to have it done without speaking with CD first.

Medical treatment refusal was signed by pt.

**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:** No

Completed by Hall, Lisa V. RN, IOP/IDC on 03/11/2020 13:51

Requested to be cosigned by Moubarek, Mohamed S. MD, CD.

Cosign documentation will be displayed on the following page.

Requested to be reviewed by Gera, Tom PA-C.

Review documentation will be displayed on the following page.

## Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M | Race: | BLACK |
| Encounter Date: | 03/11/2020 13:46 | Provider: | Hall, Lisa V. RN, IOP/IDC | Facility: | CUM |

Cosigned by Moubarek, Mohamed S. MD, CD on 03/11/2020 14:15.

# Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M | Race: | BLACK |
| Encounter Date: | 03/11/2020 13:46 | Provider: | Hall, Lisa V. RN, IOP/IDC | Facility: | CUM |

Reviewed by Gera, Tom PA-C on 03/24/2020 13:44.

# Exhibit 2.2

FCI Cumberland
14601 Burbridge Road, SE
Cumberland, Maryland 21502
Phone: 301.784.1000, Ext. 1035
Fax: 301.784.1018

**ATTENTION PROVIDER: PRIOR APPROVAL AND AUTHORIZATION FROM FCI CUMBERLAND IS REQUIRED BEFORE ANY CHANGE IN THE SCHEDULED PLAN OF CARE, SCHEDULED TESTING, OR IF CIRCUMSTANCES ARISE THAT MAY REQUIRE ADDITIONAL TREATMENT OR PROCEDURES CAN BE INITIATED. DURING NORMAL BUSINESS HOURS (M-F 7:30 AM — 4:00 PM), PLEASE CALL 301.784.1000. ALL OTHER TIMES, PLEASE CALL 301.371.3777. IF PRE-AUTHORIZATION IS NOT OBTAINED, PAYMENT FOR THE SERVICES MAY BE DENIED.**

Patient Name: Adeyola, Umar _____  __.  _____.  Reg#: 11261-055 ___  _  DOB: 01-09-1970 _____

Date of Service: 03-11-2020 _____ Physician Name/Specialty: UPMC Western Maryland Same Day Surgery

Scheduled Appt/Test/Procedure: Procedure – Lumbar Puncture _____ . _____ .

RECOMMENDATIONS:

*pt refused treatment*
*f/u with PCP w needed*

Recommended Follow-up: _____ Days: _____ Weeks: _____ Months: _____ Years

_____          _____
Physician/Staff Printed Name                          Physician/Staff Signature

**Please note any recommended follow-up appointments or additional testing will be scheduled by FCI Cumberland ONLY AFTER APPROVAL. Should you have any questions regarding this process, please contact the Medical Records office at 301.784.1035.**

***This form does not replace the requirement for an official report for this patient encounter. Reports may be faxed to 301.784.1018.

Thomas Gera MD
FCI Cumberland

TG
3/12/20

# Exhibit 3

### III.    STATEMENTS OF FACTS

The Defendants Mohammed Moubarek and Thomas Gera, (the "Individual BOP Defendants") filed their declaration with the motion to dismiss or in the alternative for summary judgment on 2/14/2023. The Defendants acknowledged in their declaration that they have access to Plaintiff's medical record, and they had the authority to review Plaintiff's medical record. Plaintiff is in the custody of the United States Bureau of Prisons and in the care of Defendants. Plaintiff has no ability to schedule medical appointments on his own, nor would the Defendants allow him to leave Cumberland Federal Prison for any medical appointments the Defendants did not arrange. Plaintiff is completely dependent on the defenders to arrange his medical care and treatment of his multiple sclerosis and physical therapy. Plaintiff has a serious medical need which has been diagnosed by physicians and specialists mandating treatment.

The Defendants intentionally with malafide intention made the following misrepresentations;

A) Paragraph 7 of Defendant Mohammed Moubarek's Declaration. Defendant alleged and claimed that Plaintiff was provided various medical equipment including Canadian Crutches.

B) Paragraph 9 of Defendant Mohammed Moubarek's Declaration. Defendant alleged and claimed that Plaintiff at West Virginia University Neurology Department refused to take tests of EMG, Spinal Tap, MRI, etc.

C) Paragraph 10 of Defendant Mohammed Mubarak's Declaration. Defendant alleged and claimed that Plaintiff was referred to Physical Therapy. Plaintiff attended physical therapy on March 3, 2020, and refused to attend further appointments as Plaintiff would be placed on medical hold and did not want to miss his opportunity to go into home confinement.

1. The aforementioned claim under a declaration is a misrepresentation with malafide intention to damage the Plaintiff's case. Defendant made the aforementioned claims without the support of admissible evidence.

2. Defendant misrepresented that Plaintiff was provided various medical equipment including Canadian Crutches. The Plaintiff brought Canadian Crutches when he self-surrendered. The defendant must submit the admissible evidence which proves that Plaintiff received and used Canadian Crutches.

   a. Plaintiff was issued Lofstrand Crutches (also known as Canadian Crutches) from St. Lawrence Rehabilitation Hospital on 8/2/2018 after Dr. Qureshi's Multiple Sclerosis diagnosis in 2018, **(Exhibit 300, page 1).**

3. The defendant intentionally misrepresentation with malafide intention that Plaintiff at West Virginia University Neurology Department refused to take tests of EMG, Spinal Tap, MRI, etc. Plaintiff never ever refused EMG. Plaintiff only refused for spinal tap due to the following two reasons;

   3.1. Refused spinal test because Plaintiff's former neurologist Drs. Balashov and Nazer Qureshi rendered a multiple sclerosis diagnosis. Plaintiff signed the release of medical records for Defendants to obtain records and analysis to confirm or disagree with the original doctor's diagnosis, however, Defendants did not request medical records from past providers (regarding Diagnosis).

   3.2. Plaintiff refused spinal tap because of Defendant's gross negligence of failing to conduct adequate assessments of prior medical records and provide medical reasons why they disagreed or doubted prior diagnosis. On page 54 of Exhibit 3 Plaintiff informed Defendant Gera, that the spinal tap was refused because BOP was provided volumes of

medical records confirming MS diagnosis and past MRI findings, including those which BOP took in 2019.

4. Defendant misrepresented with malafide intention that Plaintiff was referred to Physical Therapy arguing:

   a. Plaintiff attended physical therapy on March 3, 2020, and refused to attend further appointments as Plaintiff would be placed on medical hold and did not want to miss his opportunity to go into home confinement.

   b. On March 3, 2020, Gonzaga PT performed an assessment and requested that BOP schedule Plaintiff for treatment 2x a week for 4-6 months.

   c. Plaintiff did not attend any physical therapy treatment after his initial appointment on March 3, 2020, or refused to attend the further appointment. The court here must consider this important fact which will prove Defendants misrepresentation, the court granted the compassionate release order on July 14, 2020. Approximately 4 months after the assessment of PT. Why would Plaintiff refuse to attend a PT appointment in March when Plaintiff was not sure when he will get relief from the court? The compassionate release was and is under the sole authority of the court. Plaintiff had no knowledge if and when he will get relief, so this claim is illogical and without the support of any admissible evidence. The defendant must submit proof that Plaintiff attend one session of Physical Therapy and then refused to attend further appointments.

   d. On page 61 of Defendant Gera's motion, a 7/15/2020 Inmate Immediate Release confirm;

      1. Plaintiff's level of care was classified Medically Necessary-Non-

Emergent. According to BOP Program Statement this classification indicates a medical condition that are not immediately life-threatening but which without care the inmate could not be maintained without significant risk of: significant pain and reduction in the possibility of repair without treatment, **(Exhibit 301, page 3).**

2. From 4/15/2020 after Gonzaga Physical Therapy requested Plaintiff to be returned for treatment, BOP has repeatedly and continuously refused to returning Plaintiff to receive necessary and urgent treatment by qualified physical therapist, in contravention to recommendations by treating physical therapist and risking permanent damage.

3. On Page 16 of Defendant Gera's Exhibit 3 confirms on 1/31/2020 Dr. Sriwastava requested "MRI imaging of the brain and Spine in order to confirm the diagnosis of Multiple Sclerosis".

4. On Page 61 Defendant Gera's Exhibit 3 confirms that Defendants took almost 6 months to order and schedule Dr. Sriwastava recommended imaging. Defendants failed to quickly schedule medical appointments and evaluations of his Multiple Sclerosis. Plaintiff has a serious medical need which has been diagnosed by a physician as mandated treatment in which, upon review of MRI records in BOP's possession that even a layperson would recognize the necessity for specialist immediate and continuing attention. Plaintiff never denied or received BOP ordered MRI's; the only

MRI's taken were at Butner Low Correctional Facility in 2019.

5. On Page 61 Defendant Gera's Exhibit 3 confirms that Defendants ordered an EMG of Plaintiffs lower extremities which were requested by neurologist Dr. Sriwastava on 3/9/2020 with a scheduled testing to be done on 4/06/2020. Plaintiff was never informed that an EMG was scheduled, he was never taken to an EMG appointment or refused to be taken to one, but Defendants only scheduled "paper appointments", have not offered evidence that appointments were scheduled with providers, or proof that Plaintiff was taken to or refused EMG appointments.

5. The Court should note the further important facts that will prove the misrepresentation of Defendant. On May 1, 2020, the Court denied Plaintiff's compassionate release motion requesting that Plaintiff "reapply with more specific and definitive diagnoses of, and treatment plans for, moderate to severe asthma or multiple sclerosis or both." Docket Item 108, (**Exhibit 302, page2**).

   a. On May 29, 2020, through counsel, a motion has filed a motion to reconsider. Docket item 110. The government opposed Plaintiff's motion for reconsideration on June 4, 2020, arguing that nothing had changed vis-à-vis his primary diagnosis and that Plaintiff had failed to supply the Court with any additional information concerning his moderate to severe asthma. Docket Item 114.

   b. Plaintiff submitted a motion on June 15, 2020, Docket Item 117, and June 18, 2020, Docket Item 120, and supplied the Court with additional medical records, Docket Item 122.

    c.  After hearing an argument from both sides on June 23, the Court directed the parties to file additional submissions addressing whether the Court could impose a sentence allowing the Plaintiff to serve the remainder of his term of imprisonment on home confinement, Docket item 125.

    d.  This confirms that the Plaintiff was fighting his legal battle onwards from March 2020 and was not sure whether the court will grant the relief or not. There were no grounds on which Plaintiff refused to get further PT appointment because Plaintiff was going to grant home confinement.

6.  Defendant failed to submit any medical record of Plaintiff that proves that Plaintiff attended PT appointment, then refused to attend further PT appointments. Defendant referred to Attachment A, Medical records for proof of his argument. There is nothing in Defendant's Exhibits 1 and 3 affirming their claim that the Plaintiff refused PT appointments or expressed concerns regarding PT appointments, medical holds, or home confinement concerns. The court should order the Defendant to support this claim with admissible evidence and submit the evidence to the court.

7.  The Defendant's negligence was also acknowledged by the court. The Western District of New York, Federal Court reviewed Plaintiff's medical records on April 22, 2020, filed in a compassionate release motion because of BOP's failure refusal to adequately address Plaintiff's serious medical needs. Page 6 of the Order states: "most recent medical dockets confirm Plaintiff's claim that he is receiving neither the treatment for his primary progressive multiple sclerosis nor the prescribed treatment for his asthma. These remarks of the Court in the order are enough to prove the negligence of the defendants. The Western District of New York, Federal Court reviewed Plaintiff's medical records and then made

the conclusion and ordered that Plaintiff receive neither the treatment for his primary progressive multiple sclerosis nor the prescribed treatment for his asthma. **(Exhibit 302, page 5).**

8. B.O.P. classified Plaintiff as an Inmate requiring Medically Necessary-Emergent medical care, that (1). "without care the inmate could not be maintained without significant risk... "significant reduction in the possibility of repair later without present treatment; (2). Significant pain or discomfort which impairs the immense participation in the activities of daily living", **(Docket 301)** but the Defendant Thomas Gera committed negligence and ignored the BOP declaration. The Defendant Thomas Gera did not treat the Plaintiff as a Necessary-Emergent medical care (Special/Emergency Condition Patient). The Defendant Thomas Gera was advised and well informed Plaintiff's medical health issues, medical problems, pain, and injuries but still the Defendants did nothing to analyze or send the Plaintiff to assess risks of re-occurrence, spinal and muscle harms from falls and evaluate treatment options.

9. The Program Statement above from the Bureau of Prison establishes that Plaintiff was entitled to medically necessary care throughout his duration of their incarceration.

10. The defendants failed to adequately examine the plaintiff's repeated complaints of tremors, repeated falls, loss of vision, and pain. Defendants violated numerous Bureau of Prison Policies and constitutional protections for individuals under Prison care and custody. The discovery of additional inflammation and lesions in the Plaintiff's central nervous system, along with the lateral rear in the Plaintiff's L5-S1 area is arguably the reason for the excruciating pain and difficulty walking. Defendants failed to conduct an adequate examination to investigate Plaintiff's complaints, were deliberately indifferent to his

14

medical needs, and refused to adhere to Medical professional standards of practice resulting in harmful and tragic consequences.

11. The Defendants committed further negligence and failed to obtain a new Neurologist after Neurologist's refusal to analyze Plaintiff's MRIs, who would remain active in communication regarding Plaintiff's care to prevent irreversible, lifelong damage, including unnecessary physical, emotional, and psychological pain due to a delayed assessment, diagnosis or failure to treat in a timely manner.

12. Defendants are medical professionals who were responsible for being informed about the various MS recurrences and symptoms, referring patients timely with symptoms beyond the scope of their qualifications to specialists. The aforementioned detailed facts and the order of the Western District of New York, Federal Court proved that the Defendants committed negligence and caused severe medical health damages to the Plaintiff. The facts and order of the Western District of New York, Federal Court is enough to establish that Plaintiff is legally entitled to get relief against the negligence and damages caused to Plaintiff so the court cannot grant the Motion to Dismiss or in the Alternative for Summary Judgment.

## III. MEMORANDUM OF POINTS AND AUTHORITIES

NOW comes the memorandum of points and authorities in light of the aforementioned statements of facts. The court must dismiss the Defendant's Motion to Dismiss or in the Alternative Summary Judgment on the basis of the following legal grounds;

**1: Motion to Dismiss cannot be granted**

# Exhibit 4

# Bureau of Prisons
## Health Services
### Inmate Immediate Release

| Reg #: 11261-055 | Inmate Name: ADEYOLA, UMAR |
|---|---|

SENSITIVE BUT UNCLASSIFIED – This information is confidential and must be appropriately safeguarded.

TB Clearance: Yes

Last PPD Date: 01/06/2020           Induration: 0mm
Last Chest X-Ray Date:           Results:
TB Treatment:           Sx free for 30 days: Yes
TB Follow-up Recommended: No

Transfer To:                 Transfer Date: 07/15/2020

Health Problems

| Health Problem | Status |
|---|---|
| Scoliosis | Current |
| Overweight | Current |
|   BMI: 27.0 on 2/13/19 | |
| Alcohol Use Disorder: Moderate | Current |
|   Provisional based on self-reported information; Requires confirmation | |
| Opioid Use Disorder: Moderate | Current |
|   Provisional based on self-reported information; Requires confirmation | |
| Withdrawal from substance use | Current |
|   Alcoholic and Drug withdrawal syndrome. | |
| Multiple sclerosis | Current |
| Other peripheral vertigo | Current |
| Asthma | Current |
| Dizziness and giddiness | Current |

Medications: All medications to be continued until evaluated by a physician unless otherwise indicated. Bolded drugs required for transport.

**Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT Exp: 05/28/2021 SIG: Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) Baclofen 10 MG Tab Exp: 11/29/2020 SIG: ***crush/empty*** Take one tablet (10 MG) by mouth twice daily **non-formulary approved until: 07/16/21 ***pill line***
Budesonide/Formoterol 160-4.5 MCG/ACT 10.2 GM Exp: 06/02/2021 SIG: Inhale 2 puffs by mouth twice daily **rinse mouth after use**
DULoxetine HCl Delayed Rel 60 MG Cap Exp: 12/27/2020 SIG: Take one capsule (60 MG) by mouth each evening for pain ***pill line*** (PL for first 30 days) ***pill line*****

OTCs: Listing of all known OTCs this inmate is currently taking.
  None

Pending Appointments:

| Date | Time | Activity | Provider |
|---|---|---|---|
| 12/02/2020 | 00:00 | Chronic Care Visit | Physician |
| 12/02/2020 | 00:00 | MLP Chronic Care Follow up | MLP 03 |
| 01/06/2021 | 00:00 | PPD Administration | Nurse |
| 07/06/2020 | 08:35 | Pharmacy Intervention | Gera, Tom PA-C |

Non-Medication Orders:
  No Data Found

Active Alerts:
  No Data Found

Consultations:

---

Reg #: 11261-055                          Inmate Name: ADEYOLA, UMAR

---

SENSITIVE BUT UNCLASSIFIED – This information is confidential and must be appropriately safeguarded.

Pending Institutional Clinical Director Action
  No Data Found

Pending UR Committee Action
  Consultation/Procedure Requested: Radiology
                        Subtype: (ADR) Advanced Diagnostic Radiology
                       Priority: Routine
                      Location: Offsite
                  Ordered Date: 06/10/2020
       Scheduled Target Date: 07/09/2020
                 Level Of Care: Medically Necessary - Non-Emergent

              Reason for Request: Request MRI of brain and entire spine per request of previously consulted
                        Neurologist for confirmation of diagnosis of Multiple Sclerosis.
                        Pt is a 50 man that has been experiencing symptoms involving bilateral LE weakness
                        with bilateral foot drop, tunnel vision, dizziness and Lhermitte sign. MRI findings in
                        2018 = numerous hyperintense lesion in supratentorial distribution, minimal
                        degenerative changes L5-S1.
                        Physical exam demonstrates no LE atrophy, no weakness of proximal muscle groups
                        involving LEs and 3/5 strength bilateral distal muscles of LEs.
                        Neurologist recommends further testing prior to a formal dx of MS can be made.
        Provisional Diagnosis:

Pending Regional Review Action
  No Data Found

Pending Scheduling
  Consultation/Procedure Requested: Specialty Procedure - Offsite
                        Subtype: Offsite, NOS
                      Location: Offsite
                  Ordered Date: 03/09/2020
       Scheduled Target Date: 04/06/2020
                 Level Of Care: Medically Necessary - Non-Emergent

              Reason for Request: Request EMG of lower extremities per the request of previously consulted
                        Neurologist.
                        Pt is a 50 man that has been experiencing symptoms involving bilateral LE weakness
                        with bilateral foot drop, tunnel vision, dizziness and Lhermitte sign. MRI findings in
                        2018 = numerous hyperintense lesion in supratentorial distribution, minimal
                        degenerative changes L5-S1.
                        Physical exam demonstrates no LE atrophy, no weakness of proximal muscle groups
                        involving LEs and 3/5 strength bilateral distal muscles of LEs.
                        Neurologist recommends further testing prior to a formal dx of MS can be made.
        Provisional Diagnosis:

Pending Consultation
  Consultation/Procedure Requested: Physical Therapy
                        Subtype: Rehab 1st
                      Location: Offsite
                  Ordered Date: 03/16/2020
       Scheduled Target Date: 04/15/2020
                 Scheduled Date: **SEE BEMR**
                 Level Of Care: Medically Necessary - Non-Emergent

              Reason for Request: Request Physical Therapy twice weekly for 6 weeks as recommended by previously
                        consulted Physical Therapist for Multiple Sclerosis.

                        Pt is a 50 man that has been experiencing symptoms involving bilateral LE weakness
                        with bilateral foot drop, tunnel vision, dizziness and Lhermitte sign. MRI findings in
                        2018 = numerous hyperintense lesion in supratentorial distribution, minimal
                        degenerative changes L5-S1.
                        Physical exam demonstrates no LE atrophy, no weakness of proximal muscle groups

# Exhibit 5

**EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY**

DATE: APRIL 28, 2020

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CUMBERLAND FCI

TO  : UMAR ADEYOLA, 11261-055
      CUMBERLAND FCI     UNT: CAMP PGM    QTR: P01-021L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 1008775-F1
DATE RECEIVED  : MARCH 3, 2020
RESPONSE DUE   : APRIL 12, 2020
SUBJECT 1      : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2      : MEDICAL CARE - IMPROPER OR INADEQUATE

# Exhibit 6

## TRULINCS 11261055 - ADEYOLA, UMAR - Unit: CUM-P-A

---------------------------------------------------------------------------------------------------

FROM: 11261055
TO: Adeyola, N; Ismael, Khadijah
SUBJECT: Medical Opinion
DATE: 03/12/2020 09:07:41 AM

3/12/2020

Dr. Shitiz Sriwastava                          Certified Mail:
University of West Virginia                     7008 1830 0003 0945 3485
1 Medical Center Drive
Morgantown, WV 26506-1200

Dr. Sriwastava,

My name is Umar Adeyola and you performed a neurological evaluation for MS for me January 27, 2020. I provided the University of West Virginia (UWV) release of medical information to secure records from Robert Woods Johnson Hospital (RWJ), Rutgers Multiple Sclerosis Clinic (RU), Duke University MS and Neuroimmunology (DU) and the Bureau of Prisons (BOP) to analyze my disease course.

Khadijah Ismael, my wife has registered with UWV as my Medical Power of Attorney and and has found no evidence that that records have been secured for your review. My symptoms are getting worse and you need the Magnetic Renounce Imaging (MRI) and clinical profiling to assess the inflammatory demylination and neurological disability caused by axonal damage

Because there is no evidence that my MRI's have been secured I am providing you with BOP and RWJ's findings which you can verify. I am also providing a clinical profiling that provide you with objective assessment of my symptoms. This letter has been sent to assist with providing you relevant MRI and Clinical findings and my self reported symptomatic struggles.

In your role as my treating physician I am reaching out to you to receive a transparent assessment of condition. I understand that this disease is complicated and i am simply trying to gauge the risk of increased disabilities that I face.

----------------------------------------------------------------------

MRI Profiling:

(1). RWJ- On July 14 and 16, 2018 RWJ performed Brain, Thoracic and Cervical MRI's with and without contrast. The Brain MRI showed over 20 hyperintense T2 and FLAIR sequences in the predominately periventricular what matter. My Cervical and Thoracic Spine has a hyperintense focus at T10-T11 and an enhancing foci at C2 consistent with active demylinating plaque. THE DIAGNOSIS RENDERED WAS "POSSIBLE MS"

(2). Dr. Nazier Qureshi-Neurosurgeon- On August 2018, I went to Dr. Nazier Qureshi-Neurosurgeon with 2nd set of MRI's for spinal compress and MS reevaluations. He advised that surgery was not needed but confirmed that I have MS and recommended me to go to Rutgers Universities Multiple Sclerosis to determine what what category of MS I had. --THE DIAGNOSIS RENDERED WAS "MS"

(3). RU- During October 2018, I had new MRI's done for a second opinion and took them to RU. My treating neurologist was Dr. Balashov who ordered blood work done that included SSA/SSB, Sjogren, NMO and Lyme panels, all of which were negative. I had a host of evaluations and consults with other staff neurologist. After these consults i was diagnosed with Primary Progressive Multiple Sclerosis. --THE DIAGNOSIS RENDERED WAS "MS"

(4). DUKE MS AND NEUROIMMUNOLOGY CLINIC- On April 10, 2019 Drs. F. Lee Hartswell and Casey V. Farin, Neurologists, reviewed my MRI's and recommended that I begin disease modifying treatment to protect against further MS attacks, reduce further MS progression and nerve damage. -- THE DIAGNOSIS RENDERED WAS "MS, GAIT INSTABILITY AND SPASTICITY"

(5). BOP- On April 29, 2019 BOP performed a 3rd set of MRIs of my Brain, Cervical and Thoracic Spine with and without contrast. Dr. Bone reports these findings: Brain- "Extensive findings of chronic demylenating disease, predominantly involving the brainstem at cerebellum. There is a new single enhancing lesion in the right posterior temporal lobe, consistent with an active lesion."

Spine: A new enhancing lesion at the C4-C5 and "nonenhancing T2 and FLAIR hyperintensity in the medulla within the cervical

## TRULINCS 11261055 - ADEYOLA, UMAR - Unit: CUM-P-A

-------------------------------------------------------------------------------------------------

cord, non enhancing areas of increased T2 signal are present with the cord at the following locations- C2, C3 and C6- C7. The Thoracic presents a focus of increased T2 signals at the T7-T8 and T9-T10 levels. THE DIAGNOSIS RENDERED WAS "POSSIBLE MS"

The McDonald Criteria has defined that a positive Brain MRI that has nine (9) or more T2 lesions, a Spinal Cord MRI that has two (2) focal T2 lesions and one year of disease progression  (retrospectively or prospectively determined as "Insidious Neurological Progression".

Clinical Profiling Post-dating RWJ Hospitalization

1- On 2/13/19 Jennifer Adkins, Nurse Practioner from BOP reports abnormal gait, pain, paresthesia, asthma, incontinence, ataxia

2. On 3/6/19 Dr. Berry, Physical Therapist from BOP reports ataxic gait patter holding crutches, bil clonus, ankle dorsiflexion, Bil - C5. C6, L4 S1 Hyperactivity. Dr Berry also reports : ROM- BLE except for left ankle. DF ROM >10 from neutral, bil clonus with passive stretch into ankle dorsiflexion.

3- On 4/10 19 Dr. Hartswell, Neurologist from Duke University's MS and Neuroimmunlogy Clinic reports spasticity, gait instability and confirms diagnosis of Multiple Sclerosis. Facial sensation decreased to light touch and pinprick, decreased sensation in vibration in left >right lower extremities.

4. On 10/9/19 Dr. Tilley from BOP reports severe persistent asthma.

5. On 11/13/19 Dr. Olson, Neurological Surgeon reports Lhermitts signs with neck inflection, funduscopic exam difficult because of pupillary size but did appear there may have been some optic atrophy. The Doctor noted increased tone and weakness in all extremities, range of motion and sensations below normal in lower extremities, bilateral foot drop, tendon reflexes were hyper reflexic. Spastic gait, back pain, trouble holding on to objects, vision failure and short term memory difficulties and used cane to ambulate.

6. on 12/2/2020 Dr. Mubarak states for:

Pulmonary: vasicular breath sounds bilaterally, bronchial sounds, crackles, rhonchi, wheezing, Asthma

Neurological: Atrophy and weakness, abnormal gait;

-------------------------------------------------------------------------------------------------

Subjective

I am experiencing extreme fatigue, numbness, gait imbalance and coordination problems, bladder and bowel problems, dizziness and vertigo, extreme pain, troubling communicating because I cant remembering what I wanted to say, headaches so severe that they feel like a knife is poking in my head. My symptoms are worsening and my MRI's provide objective evidence of over 21 T2 enhancing lesions and nonenhancing lesions in my brain, with over 5 T2 enhancing and nonenhancing lesions in my spinal cord. My MRI's show dissemination in space and time and over two years of disease progression with active, ongoing inflammation. My MRI's present compelling edvidence that I suffering acute and painful sysmtoms from insidious neurological demylination.

Dr. Sriwastava, as my treating physician would you please provide your medical opinion of:

1) If Denied or delayed MS Treatment will increase the likihood of degeneration and death of nerve cells in my Central Nervous System?

2) Will I have a high likelihood of irreparable harm and loss without disease modifying treatment to slow,  lesion accumulation, disease progression and permanent disabilities?

The constellation of RWJ's 7/2018 and BOP's 5/19 MRI's provide compelling evidence of demylinating lesions that have occurred in different areas of my central nervous system and have accumulated over time. I am seeking your medical opinion after my family has researched UWV'S NEUROLOGICAL Department and I believe that this correspondence will assist me receiving the right care, reduce confusion to receive the appropriate medical care commensurate community medical care for a

**TRULINCS  11261055 - ADEYOLA, UMAR - Unit: CUM-P-A**

--------------------------------------------------------------------------------------------------------

person suffering from MS with my degree of impairment.

I would appreciate it as my treating physician, if you can provide me a medical opinion regarding my questions by March 31, 2020. I appreciate your efforts in assisting me to better understand the complexities of MS.

Thanking you in advance,

Umar Adeyola

CC: Khadijah Ismael

# Exhibit 7

 Gmail

umar adeyo <uadey1234@gmail.com>

## Re: Remedy# 1008775
4 messages

---

**MXRO/Exec Assistant~** <MXRO/Exec.Assistant~@bop.gov>
To: umar adeyo <uadey1234@gmail.com>
Cc: BUX/Exec.Assistant~@bop.gov

Tue, Oct 13, 2020 at 10:10 PM

```
By way of cc, your correspondence is being sent to the institution for a
response as they can best address your concerns at their level.
```

>>> umar adeyo <uadey1234@gmail.com> 10/13/2020 10:15 AM >>>
I submitted a BP 9 to Butner LCSI, delivered March 16, 2020. The facility has failed to respond to this administrative request. Butners failure to respond to my BP 9 is preventing me from requesting review from BOP Mid Atlantic.

My BP 9 was sent certified mail through USPS. The tracking number is 7008 1830 0003 0945 3478.

I am requesting that Butner LCSI respond to my request for information regarding their failure to provide me medical treatment addressing my Multiple Sclerosis.

Best regards,

Umar Adeyola
11261 055

---

**BUX/Exec Assistant~** <BUX/Exec.Assistant~@bop.gov>
To: uadey1234@gmail.com

Thu, Oct 15, 2020 at 12:27 PM

Greetings,

Please see the attached response.

From the Office of the Executive Assistant
[Quoted text hidden]

---

📄 **BP-9 Adeyola 1008775-F1.pdf**
45K

---

**umar adeyo** <uadey1234@gmail.com>
To: umar adeyo <uadey1234@gmail.com>

Fri, Mar 31, 2023 at 4:21 PM

Sent from my iPhone

Begin forwarded message:

> **From:** umar adeyo <uadey1234@gmail.com>
> **Date:** April 26, 2021 at 1:09:22 AM EDT
> **To:** BUX/Exec Assistant~ <BUX/Exec.Assistant~@bop.gov>
> **Subject:** Re: Remedy# 1008775

**April 26, 2021**

US Department of Justice

Mid-Atlantic Office

302 Sentinel Drive, Ste 200

Annapolis Junction, MD 20701

Re: Appeal ID 1008775

Dear Mid-Atlantic Office,

On April 21, 2020 BOP Mid-Atlantic received my BP-10 for Appeal ID 1008775 for Butner's "Improper delay to providing Medical Care", certified USPS mail # 7013 3020 0001 3096 4614.

One year and one month has passed since BOP Mid Atlantic received my BP-10 on April 21, 2020, and I will exercise my rights under Program Statement #1330.18 to appeal to the General Counsel if I do not receive a response within 20 days.

I look forward to your response to my BP-10. Please send all communication to *Umar Adeyola, 6 Granite Road, East Windsor NJ 08520.*

Thanking you in advance,

Umar Adeyola

[Quoted text hidden]

**umar adeyo** <uadey1234@gmail.com>
To: BUX/Exec Assistant~ <BUX/Exec.Assistant~@bop.gov>

Mon, Oct 9, 2023 at 9:03 AM

Good Morning,

My name is Umar Adeyola, registration 11261-055. On October 15, 2020, your office forwarded me a response to my BP 9, Would you please please have the administrative Remedy Coordinator provide me a listing from SENTRY of all BP 8, 9, and 10s that was received during 2019 and 2020 for me? Is there are any questions or concerns please don't hesitate to contact me at 716-335-5929 or uadey1234@gmail.com.

Thank you in advance,

Umar Adeyola

On Thu, Oct 15, 2020 at 12:27 PM BUX/Exec Assistant~ <BUX/Exec.Assistant~@bop.gov> wrote:
[Quoted text hidden]

# Exhibit 8

**⊖ My Account**   **⤷ Sign Out**   **❷ Help**

HOME    TRACKING INBOX

Tracking Inbox ▸ Appeal

 **A-2021-01607**

**Requester:** adeyola, umar

Status: Closed

## Appeal

### Appeal Information

| Received Date | 04/26/2021 | | |
|---|---|---|---|
| | | Agency | OIP |
| | | Document Delivery Method | Email |

### Request Information

| Request Number | 1008775-R3 |
|---|---|
| Component | BOP |
| Subject of Request | |

### Basis for Appeal

| Description of Appeal | Failure to diagnose and treat Multiple Sclerosis with disease-modifying treatment (DMT), for treatment of active exacerbations, inflammations, and the accumulation of lesions in my spine and brain. |
|---|---|
| | On April 16, 2019, BOP's Utilization Review Committee determined that treating MS was medically unnecessary. From that point, BOP willing and knowingly refused to provided my treating physician's recommendations of continued neurological treatment with Duke Neurologogy. |
| Based on Denial of Fee Waiver | No |
| Based on Denial of Expedited Processing | No |
| Requester Item Type 1 | |
| Requester Items 1 | |
| Requester Item Type 2 | |
| Requester Items 2 | |
| Requester Item Type 3 | |
| Requester Items 3 | |

### Requester Contact Information

| Salutation | Mr. | | |
|---|---|---|---|
| First Name | umar | Address Type | |
| Middle Name | | Country | United Stat |
| Last Name | adeyola | Address Line 1 | 6 Granite R |
| Email Address | uadey1234@gmail.com | Address Line 2 | |
| Organization | | City | East Winds |
| Register Number | | State | New Jersey |
| Phone Number | 17163355929 | Zip/Postal Code | 08520 |
| Fax Number | | | |
| Other Information | | | |

### Expedited Processing Information

| Expedited Processing Requested? | Yes | | |
|---|---|---|---|
| Expedited Processing Request Date | | Expedited Justification | I submitted BOP Mid-A appeal was sent by cer |
| Expedited Processing Determination | Denied | | |

Mid-Atlantic
April 23, 20

because of
requesting ·
that BOP re
inflammatio

Mid-Atlantic
substantial
beyond BO

Standards for Expedition                3. The loss of substantial due process rights.

# Exhibit 9

U.S. Department of Justice
Federal Bureau of Prisons          Request for Administrative Remedy
FCI Cumberland                                Part B – Response

**Admin Remedy Number:** 1008775-F1

This is in response to your Request for Administrative Remedy
receipted at FCI Cumberland, March 3, 2020, wherein you allege you
did not receive medical care to treat your multiple sclerosis
while designated at the Low Security Correctional Institution
(LSCI), Butner, NC.  Your request was received by LSCI Butner on
September 11, 2020.

A review of your medical record indicates that you arrived at LSCI
Butner on February 11, 2019.  An initial chronic care physician
evaluation was completed on February 13, 2019. During this
clinical evaluation, you disclosed a history of multiple sclerosis
diagnosed approximately six (6) months prior, following an MRI;
left foot drop and a progressive "slapping" of the right foot;
intermittent incontinence of stool; and a verbal report of a
cervical fracture.  During the medical exam, you verbalized using
forearm crutches to assist with ambulation due to foot drop and
discomfort.  An MRI-Spine and Pelvis-Cervical spinal canal and
contents, MRI-Spine and Pelvis-Lumbar spinal canal and contents,
MRI-Spine and Pelvis-Thoracic spinal canal and contents were
requested.  A Neurology consult was also recommended.

On February 22, 2019, the MRI was completed and revealed the
following: far left lateral disc protrusion at L3-L4, which may be
producing compression and slight posterior displacement of the
left L3 nerve root as it exits the foramen; a mild broad
posterior disc protrusion eccentric to the left at L4-L5
produced ventral mass effect on the thecal sac to the left of
midline; chronic lower lumbar facet DJD; and probable artifact
projecting over the lower thoracic spinal cord on the sagittal
STIR sequence.

On March 6, 2019, you were evaluated by Physical Therapy for
ambulation difficulty and strengthening exercises.  A treatment
plan was established.

On April 10, 2019, you were evaluated by the Neurologist who
documented "likely multiple sclerosis with associated walking
instability and lumbago with overlapping DDD."  Recommendations
included Baclofen 10mg TID, continued Physical Therapy, and

Admin. Remedy ID#1008775-F1
Page 2 of 3

repeat of the MRI of the brain, C-Spine and T-Spine before
returning for a follow-up in three (3) months.

On April 11, 2019, a consult was recommended following
Neurology recommendation for an MRI-Head and Neck-Brain
(including 04/26/2019 stem) with and without contrast, an
MRI-Spine and Pelvis-Cervical spinal canal and contents, and an
MRI-Spine and Pelvis-Thoracic spinal canal and contents.  Consult
for Neurology was also recommended following completion of
imaging.

On April 29, 2019, an MRI of the brain was completed revealing
extensive finding of chronic demyelinating disease, predominantly
involving the cerebral hemispheres, but with involvement in the
brainstem and cerebellum.  Findings also indicated a new single
enhancing lesion in the right posterior temporal lobe, consistent
with an active lesion.  No other significant interval changes were
identified.

On April 29, 2019, an MRI of the cervical spine was completed and
revealed findings consistent with demyelinating disease in the
cervical cord, as further detailed above.  However, no enhancing
cord lesion was identified at that time.  Multilevel findings of
degenerative cervical spondylosis with areas of stenosis was
identified as further detailed above.

On April 29, 2019, an MRI of the thoracic spine was completed
revealing no definite interval change in cord lesions.  No
contrast enhancement abnormality of the thoracic cord was
identified.  Stable appearance of epidural cyst was within the
dorsal aspect of the spinal canal at the T2-T3 level.

On May 24, 2019, Physical Therapy documented that two (2)
consecutive scheduled therapy sessions were missed.

On May 31, 2019, you were discharged from Physical Therapy after
meeting treatment goals.

On November 13, 2019, you were evaluated by Neurosurgery with
clinical findings of multiple sclerosis with bilateral foot drop.
A review of the MRI scan of the lumbar and cervical spine
indicated multiple demyelinating plaque throughout the cervical
cord and assumed probably in the conus.  There was mild
spondylosis in the cervical area with distortion of the cord but
no severe compression.  There was nothing on the MRI of the lumbar

Admin. Remedy ID#1008775-F1
Page 3 of 3

spine which would explain bilateral foot drop. Foot drop is
unusual with multiple sclerosis unless there is a plaque at the
root exit zone, which was suspected. Some mild disk bulging in
the cervical region caused some distortion of the cord, but this
would not cause the multiple lesions seen on the T2 weighted
imaging.

On November 14, 2019, an exit summary was completed for your
transfer to FCI Cumberland.

Your medical record documents a course of ongoing medical
treatment, evaluation, diagnostic imaging, therapy and specialty
consultation while housed at LSCI Butner. Your medical record
reflects you received appropriate and timely medical care.

Based on the above information, your request for administrative
remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the
Regional Director, Federal Bureau of Prisons, Mid-Atlantic
Regional Office, 302 Sentinel Drive, Suite 200, Annapolis
Junction, MD 20701. Your appeal must be received in the Regional
Office within 20 calendar days from the date of this response.

_____          ___4/17/20___
Tamara S. Lyn, Warden                     Date

# Exhibit 10



AIG Property & Casualty
PO Box 25670
Shawnee Mission KS 66225

www.aig.com

James Harlan
Complex Director
T 304 357 4615
F 855 290 6705
james.harlan@aig.com

June 20, 2022

Umar Adeyola
6 Granite Rd.
East Windsor, NJ 08250

| | |
|---|---|
| Claimant: | Umar Adeyloa |
| AIG File No.: | 501-944435 |
| Date of Loss: | 3/18/2022 |
| Policy Number: | 654-71-29 |
| Venue: | USDC ND MD |
| Civil Action No.: | 1:22-cv-00781-TDC |

Dear Mr. Adeyola:

This will acknowledge receipt of copies of the above captioned lawsuit. Please note that AIG Property & Casualty is the claims administrator for National Union Fire Insurance Company of Pittsburgh, PA, which issued policy number GL 654-71-29 to the State of West Virginia / West Virginia University. This is a Comprehensive General Liability policy and is online at brim.wv.gov under the policy tab. The Certificate of Insurance that adds WVU as an insured to the policy is attached to this letter. The per occurrence limit of liability for medical malpractice claims is $1,664,000. This matter is one occurrence. Please be advised that I am the adjuster handling this claim and all future correspondence to AIG should be directed to my attention referencing claim number 501-944435.

Please note that I have assigned Chelsea Brown, Esq. to represent WVU and its employees, which includes WVU faculty staff physician Shitiz Sriwastava, MD. Ms. Brown's contact information is Chelsea Brown, Esq., Bowles Rice LLP, 125 Granville Square, Suite 400, Morgantown, WV 26501. Tel: (304) 285-2505 | Fax: (304) 285-2575. You may have already heard from Ms. Brown by the time you have received this letter as she will be your contact person for this matter.

Please contact me with any questions regarding this letter.

Sincerely,

**James Glen Harlan**  Digitally signed by James Glen Harlan
Date: 2022.06.20 17:54:59 -04'00'

James G. Harlan
Complex Director
304-357-4615

# Exhibit 11

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | |
|---|---|
| Inmate Name: ADEYOLA, UMAR | Reg #: 11261-055 |
| Date of Birth: 01/09/1970 | Sex: M Race: BLACK    Facility: CUM |
| Encounter Date: 12/02/2019 08:56 | Provider: Gera, Tom PA-C    Unit: G02 |

Chronic Care - Advanced Practice Provider Follow Up encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**    **Provider:** Gera, Tom PA-C

**Chief Complaint:** NEUROLOGY

**Subjective:** Pt dxd with MS approx. 18 months ago. Pt has notes dx = progressive MS. Pt notes experienced bilateral foot drop and notes easier to ambulate with single cane. In

**Pain:** No

**COMPLAINT 2**    **Provider:** Gera, Tom PA-C

**Chief Complaint:** PULMONARY/RESPIRATORY

**Subjective:** hx of asthma currently using inhalers as Rxd.

**Pain:** No

Seen for clinic(s): Neurology, Pulmonary/Respiratory

**OBJECTIVE:**

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 12/02/2019 | 12:00 | 82 | | | Gera, Tom PA-C |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 12/02/2019 | 12:00 CUM | 142/110 | | | | Gera, Tom PA-C |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 12/02/2019 | 12:00 CUM | 185.0 | 83.9 | | Gera, Tom PA-C |

**Exam:**

**General**

  **Appearance**

    Yes: Appears Well

**Eyes**

  **General**

    Yes: PERRLA, Extraocular Movements Intact

  **Fundus Exam**

    Yes: Grossly Normal Retina

**Pulmonary**

  **Observation/Inspection**

    Yes: Within Normal Limits

  **Auscultation**

    Yes: Clear to Auscultation

**Cardiovascular**

  **Observation**

| Inmate Name:   ADEYOLA, UMAR | | |
| --- | --- | --- |
| Date of Birth:   01/09/1970 | Sex:     M     Race:  BLACK | Reg #:   11261-055 |
| Encounter Date: 12/02/2019 08:56 | Provider:  Gera, Tom PA-C | Facility:  CUM |
| | | Unit:     G02 |

## Exam:

> Yes: Within Normal Limits

### Auscultation

> Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2
> No: M/R/G

## Neurologic

### Cranial Nerves (CN)

> Yes: Within Normal Limits

### Exam Comments

pt demonstrates no evidence of muscle mass atrophy.

formal exam of pt demonstrates inability to peform active dorsi flexion of bilateral ankles and bilateral leg strength = 3+/5 with pt unable to actively fully extend R knee, passive ROM of bilateral ankles and knees demonstrate full ROM.

Prior to and directly after exam pt is observed to ambulate with use of single Canadian crutch and demonstrates ability to keep L ankle at neutral while walking and R ankle does demonstrates foot drop. Ambulation is accomplished with ability to fully extend bilateral knees and negotiate getting on and off of exam table without difficulty and  without assistive device.

## ASSESSMENT:

Asthma, J45909 - Current

Multiple sclerosis, G35 - Current

## PLAN:

### Renew Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
| --- | --- | --- | --- |
| 107872-CUM | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | 12/02/2019 08:56 | Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) PRN x 360 day(s) |
| | **Indication: Asthma** | | |
| 1556833-BUX | Budesonide/Formoterol 160-4.5 MCG/ACT 10.2 GM | 12/02/2019 08:56 | Inhale 2 puffs by mouth twice daily **rinse mouth after use** x 365 day(s) |
| | **Indication: Asthma** | | |
| 107874-CUM | Baclofen 10 MG Tab | 12/02/2019 08:56 | ***crush/empty*** Take one tablet (10 MG) by mouth twice daily **non-formulary approved until: 07/16/21 x 180 day(s) Pill Line Only |
| | **Indication: Multiple sclerosis** | | |
| 107875-CUM | DULoxetine HCl Delayed Rel 60 MG Cap | 12/02/2019 08:56 | Take one capsule (60 MG) by mouth each evening for pain x 30 day(s) Pill Line Only |
| | **Indication: Multiple sclerosis** | | |

### Discontinued Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
| --- | --- | --- | --- |

| Inmate Name: ADEYOLA, UMAR | | Reg #: 11261-055 |
|---|---|---|
| Date of Birth: 01/09/1970 | Sex: M Race: BLACK | Facility: CUM |
| Encounter Date: 12/02/2019 08:56 | Provider: Gera, Tom PA-C | Unit: G02 |

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 107873-CUM | Thiamine HCl 100 MG Tab | 12/02/2019 08:56 | Take one tablet (100 MG) by mouth each day |

    **Discontinue Type:** *When Pharmacy Processes*

    **Discontinue Reason:** *discontinue*

    **Indication:**

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC | Recurring | 01/15/2020 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-TSH | | | |
| Lab Tests - Short List-General-Microalbumin & Creatinine, Urine Random | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |

    **Labs requested to be reviewed by:** Moubarek, Mohamed S. MD, CD

| | | | |
|---|---|---|---|
| Lab Tests - Short List-General-CBC | Recurring | 11/15/2020 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-TSH | | | |
| Lab Tests - Short List-General-Microalbumin & Creatinine, Urine Random | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |

    **Labs requested to be reviewed by:** Moubarek, Mohamed S. MD, CD

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Neurology | 01/02/2020 | 01/02/2020 | Routine | No | |

    **Subtype:**

    Drs. Riaz Janjua & Murtaza Amir

    **Reason for Request:**

    Request evaluation by Neurologist regarding Multiple Sclerosis and options for disease modifying therapy. Pt was diagnosed with Multiple Sclerosis approximately 20 months ago due to MRI findings. Physical exam demonstrates bilateral R > L foot drop for which evaluation by Neurosurgeon believes symptoms are caused by MS plaque lesion at nerve root due to no evidence of structural back abnormality that can cause this symptom.

    Attached are copies of prior imaging studies.

**Discontinued Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Respiratory Therapy | 01/18/2020 | 01/18/2020 | Routine | No | |

    **Subtype:**

    Respiratory Therapy

    **Reason for Request:**

    severe persistant asthma, seen by pulmonary 10/9/19, stared on symbicort, need 3 m f/u pfts- pre and post bronchodilator.

| Pulmonology | 02/07/2020 | 02/07/2020 | Routine | No | |

    **Subtype:**

    Pulmonology - Inhouse

| Inmate Name: ADEYOLA, UMAR | | Reg #: 11261-055 |
|---|---|---|

Inmate Name: ADEYOLA, UMAR
Date of Birth: 01/09/1970
Encounter Date: 12/02/2019 08:56

Sex:     M     Race: BLACK
Provider: Gera, Tom PA-C

Reg #: 11261-055
Facility: CUM
Unit:     G02

**Reason for Request:**

Inmate with severe persistent asthma, seen by pulmonary 10/9/19, started on symbicort, need 3 m f/u apt after rpt pfts ( pfts ordered)

**Disposition:**

Follow-up at Sick Call as Needed
Will Be Placed on Callout
Return Immediately if Condition Worsens

**Other:**

advised pt to use both Canadian crutches and to use AFOs issued to assist with ambulation.

Lab orders placed during this encounter are routine in nature and have been assigned an arbitrary due date to facilitate BEMR Order entry. Completion of the these labs within 30 days preceding or following the listed due date is clinically appropriate.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 12/02/2019 | Counseling | Plan of Care | Gera, Tom | Verbalizes Understanding |

Finding by MRI consistent with MS, neurosurgeon evaluation sees no correlation of LE weakness due to structural abnormality and notes continued f/u with neurologist regarding most likely cause of demyelinating lesion on nerve root that could cause experienced foot drop. Will make consult for Neurologist review for treatment plan regarding possible medications (DMT).
Asthma evaluation demonstrated by PFT demonstrates irregular readings which questions validity of participation of test.
Lungs are clear to auscultation this date.

**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:** No

Completed by Gera, Tom PA-C on 12/02/2019 13:34
Requested to be cosigned by Moubarek, Mohamed S. MD, CD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M | Race: | BLACK |
| Encounter Date: | 12/02/2019 08:56 | Provider: | Gera, Tom PA-C | Facility: | CUM |

Cosigned by Moubarek, Mohamed S. MD, CD on 12/03/2019 16:45.

# Exhibit 12

Fax Server            1/31/2020 7:59:20 PM  PAGE   2/008  Fax Server

Moubarck, Muhamed
FCI
14601 BURBRIDGE RD SE    **FCI CUMBERLAND**
CUMBERLAND MD 21502

Patient:      Umar Adeyola    11261-OSS
MR Number:    E3138269
Date of Birth: 1/9/1970

Your patient, Umar Adeyola, had a recent encounter at WVU Medicine. Enclosed please find documentation from the encounter. We appreciate participating in the healthcare provided to your patient. If you have questions, please don't hesitate to contact me through the WVU Medicine Medical Access and Referral System (MARS) at 1-800-982-6277.

Sincerely,
Shitiz Sriwastava, MD

*WARNING The documents accompanying this may contain confidential health information that is legally privileged. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party unless required to do so by law or regulation and is required to destroy the information after its stated need has been fulfilled. If youure not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this information in error, please notify 304-598-4000 and arrange for the return or destruction of these documents.*

Thomas Gern PA-C
FCI Cumberland

2/6/20

Adeyola, Umar (MRN E3138269)                                                    Page 2 of 6
**H&P signed by Sriwastava, Shiliz, MD at 01/31/20 1958  (continued)**

complaining of vision that he feels like he has a tunnel vision with occasional retro-orbital pain. He never lost vision. He has never been treated with IV Solu-Medrol for the above-mentioned symptoms.

He went to his primary care physician and also was seen by a neurologist, Dr. Kureishy, and underwent MRI imaging. At that time his symptoms where in July 2018, including dizziness, feeling of gait imbalance, feeling of the room spinning and back pain and also complaining of footdrop. His initial MRI imaging of the brain was done from July 2018.

This MRI imaging of the brain was done without contrast and it was reported to have numerous hyperintense lesions in the supratentorial distribution with a concern of demyelinating plaque .

MRI of the cervical spine from the same time period from July 2018 was reported as a foci of T2 lesions in the cervical cord, mainly at C2 level and at C3 level and this again was done without contrast.

MRI of the lumbar spine from July 2018 again without contrast shows minimal degenerative changes at L5-S1. His repeat scan of the MRI imaging of the brain, MRI of the cervical spine and MRI of the T-spine was done with and without contrast following the initial MRI and this is repeat MRI imaging with contrast was reported to have an enhancing lesion in the brain involving the right posterior temporal lobe apart from numerous T2 hyperintense lesions in the supratentorial distribution.

MRI of the thoracic spine showed a T2 lesion at T7, T8 and T10-T11 and also epidural cyst noted in the left dorsal aspect. MRI of the cervical spine shows enhancing lesion of his corresponding C2 lesions from his prior MRI imaging without contrast.

The repeat MRI imaging with contrast was done in the same time interval following his initial MRI imaging.

He also had blood work done, including SSA/SSB, Sjogren's panel to be negative. NMO panel was negative. He was also seen by his neurologist and the patient has a concern that it could be a pinched nerve in the lumbar spine causing him to have footdrop. He was seen by a neurosurgeon and the recommendation for him was that he does have a lesion in the cervical spine that likely causing foot drop. The demyelinating plaque can explain his footdrop and they are not concerned for lumbar disk disease based on his MRI of the lumbar spine. We do not have any of those imaging studies here on the disc today to look into imaging review.

He never had any spinal tap done. He continued to have a feeling of dizziness. He also complained of neck pain. He complains of Lhermitte sign. He had complained of double vision on and off going on since July 2018. He also is complaining of room spinning without nausea, vomiting, going on intermittently for 7 months and a feeling of near syncopal like episodes.

He does have bladder incontinence for the last 1-2 years. He also complained of pain when having a bowel movement. He denies any falls, but he has to be cautious while walking and uses a cane for long distance ambulation. He also complained of recent trouble with memory mainly with recent memory. His remote memory is intact as per the patient.

He was on oxycodone in the past for his pain and currently has been taking a baclofen 10 mg 2 times a day given by his primary care physician. He was also on various street drugs, but he denies actively on any of those medications currently. He denies any IV drugs. He denies any history of back pain, back trauma. He denies any history of surgery in his back.

PAST MEDICAL HISTORY:
Significant for low back pain and recently diagnosis of multiple sclerosis.

PAST SURGICAL HISTORY:
Denies any history of surgery.

FAMILY HISTORY:
Mother has lupus.  Father has diabetes.

SOCIAL HISTORY·
He works full time as a manager for mental health service.  He is married.  He denies any alcohol, illicit drugs, any IV drugs.

Umar Adeyola is a 50 y.o. male who presents with a chief complaint of
Chief Complaint
Patient presents with
  • Multiple Sclerosis

The patient reports: complaint(s) of:  difficulty in walking, difficulty in urinating, numbness or tingling, urinary problems, weakness and foot drop.

**Past Medical History**
Current Outpatient Medications
Medication        Sig
  • baclofen (LIORESAL) 10 mg Oral   Take 1 Tab (10 mg total) by mouth Three times a day
    Tablet

No Known Allergies
PAST MEDICAL HISTORY:
Significant for low back pain and recently diagnosis of multiple sclerosis.

PAST SURGICAL HISTORY:
Denies any history of major surgery.

FAMILY HISTORY:
Mother has lupus.  Father has diabetes.

Social History

Tobacco Use
  • Smoking status:       Never Smoker
  • Smokeless tobacco:    Never Used

**Review of Systems**
Other than ROS in the HPI, all other systems were negative.

**Examination:**

Vitals: BP (!) 142/86  | Pulse 86  | Ht 1.778 m (5' 10")  | Wt 88.5 kg (195 lo 1. / oz)  | SpO2 96%  | BMI 27.99 kg/m²

General: appears in good health
NECK: No nuchal rigidity.
MUSCULOSKELETAL: Normal.

Fax Server                    1/31/2020 7:59:20 PM  PAGE   6/008   Fax Sorvor

Adeyola, Umar (MRN E3138269)
H&P signed by Sriwastava, Shitiz, MD at 01/31/20 1958  (continued)

SKIN: No rashes.

CARDIOVASCULAR: S1 and S2 heard. No murmurs noted.

RESPIRATORY: Bilateral bronchovascular breath sounds appreciated. No crackles or wheezes.

NEUROLOGIC: Comprehensive neurologic exam was performed. She is alert and oriented to time, place, and person. Good recall. Good registration. Normal episodic, semantic, and procedural memory. No hallucinations or delusions. Mood was congruent.Speech is fluent and comprehensive.Fund of knowledge intact.

CRANIAL NERVES: Fundus examination no disc edema no pallor. Visual acuity 20/20 without correction. Visual fields were normal. Pupils arc reactive to light.There is no INO no APD.Extraocular movements, normal full versions and ductions with normal pursuits and saccades. Normal facial sensation and strength in V1, V2, and V3 area. No dysarthria. Muscles of mastication normal. Tongue movements were normal. Normal hearing to finger rub. Neck strength and shoulder shrug were normal.Cranial nerve 9 and 10 intact with intact gag refelx.uvula in midline ,soft palate elevates in midline.

Coordination :intact for finger to nose test and heel to shin test,tandem walk is intact.

MOTOR: Gait bilateral dragging of foot . Rapid alternating movement was intact. Motor strength in the upper extremities 5/5. Lower extremity proximally is 5/5. Distally at the hamstring muscles it is 4/5 due to pain distally in the foot in dorsiflexion, plantar flexion, inversion and eversion is 3/5 on the left side and the right side is 2/5. . Tone and bulk appear normal. Muscle Tone: Normal

Muscle exam

| Arm | Right | Left | Leg | Right | Left |
|---|---|---|---|---|---|
| Deltoid | 4/5 | 5/5 | Iliopsoas | 5/5 | 5/5 |
| Biceps | 5/5 | 5/5 | Quads | 5/5 | 5/5 |
| Triceps | 5/5 | 5/5 | Hamstrings | 4/5 | 4/5 |
| Wrist Extension | 5/5 | 5/5 | Ankle Dorsi Flexion | 4/5 | 4/5 |
| Wrist Flexion | 5/5 | 5/5 | Ankle Plantar Flexion | 5-/5 | 5-/5 |
| Interossei | 5/5 | 5/5 | Ankle Eversion | 5-/5 | 5-/5 |
| APB | 5/5 | 5/5 | Ankle Inversion | 5-/5 | 5-/5 |

Reflexes

| | RJ | BJ | TJ | KJ | AJ | Plantars | Hoffman's |
|---|---|---|---|---|---|---|---|
| Right | 2+ | 3+ | 3+ | 2+ | 2+ | Downgoing | Not present |
| Left | 2+ | 3+ | 3+ | 2+ | 2+ | Downgoing | Not present |

SENSORY: Pinprick, temperature was normal in bilateral upper and lower extremities. Proprioception intact and moderate vibration in foot.

I have reviewed the following: outside records

Assessment and Plan

1.  **Weakness of both legs**
2.  **Right foot drop**
3.  **MS (multiple sclerosis) (CMS HCC)**

Orders Placed This Encounter
 • LUMBAR PUNCTURE- DIAG. (AMB ONLY)
 • MRI SPINE LUMBOSACRAL W/WO CONTRAST
 • Hemoglobin A1C
 •

Adeyola, Umar (MRN E3138269)
H&P signed by Sriwastava, Shitiz, MD at 01/31/20 1958 (continued)

Vitamin B12
- VITAMIN B1 (THIAMIN), WHOLE BLOOD
- IMMUNOTYPING, SERUM
- Folate
- METHYLMALONIC ACID (MMA), QUANTITATIVE, SERUM
- THYROID STIMULATING HORMONE (SENSITIVE TSH)
- Sedimentation Rate
- GAD65 AB ASSAY, S
- MULTIPLE SCLEROSIS (MS) PROFILE WITH OLIGOCLONAL BANDING
- Cbc/Diff
- Microscopic Urinalysis
- FLOW CYTOMETRY, CSF (BEAKER)
- GAD65 AB ASSAY, CSF
- ANGIOTENSIN CONVERTING ENZYME (ACE), CSF
- BODY FLUID CELL COUNT WITH DIFFERENTIAL - RUBY/UHC ONLY - CSF
- PROTEIN CSF
- External Referral to Physical Therapy
- baclofen (LIORESAL) 10 mg Oral Tablet
- FLOW CYTOMETRY, CSF
- DME - MITCHELL'S TYPE AFO

ASSESSMENT AND PLAN:

Mr. Adeyola is a 50-year-old right-handed African-American male who comes for the first time in the neurology clinic for evaluation for multiple sclerosis based on the written report of MRI imaging from July 2018. He has extensive lesions in the supratentorial distribution reported as lesion suggestive of demyelinating plaque. He has also had a 3 mm focus in the midline in the pontomedullary junction as per written report.

His repeat scan of the MRI imaging of the brain, MRI of the cervical spine and MRI of the T-spine was done with and without contrast following the initial MRI and this is repeat MRI imaging with contrast was reported to have an enhancing lesion in the brain involving the right posterior temporal lobe apart from numerous T2 hyperintense lesions in the supratentorial distribution.

MRI of the thoracic spine showed a T2 lesion at T7, T8 and T10-T11 and also epidural cyst noted in the left dorsal aspect. MRI of the cervical spine shows enhancing lesion of his corresponding C2 lesions from his prior MRI imaging without contrast.

NMO antibodies panel has been negative. His symptoms started back in July 2018 with weakness in the lower extremities and currently he complains of bilateral footdrop. He denies any history of back trauma. He denies any history of bowel incontinence, but he does have bladder incontinence for the last 2 years. He also complains of significant fatigue. He complains of Lhermitte sign. He also complained of tunnel vision without loss of vision. He also complained of vertigo, which he feels like the room is spinning without nausea and vomiting. He denies any balance issues. He also complained of trouble with memory mainly with short-term memory. He also complained of paraspinal muscle spasms, right more than the left, and he is currently on baclofen 10 mg 2 times a day. He has not been on any disease-modifying therapy for multiple sclerosis. He has never been on Solu-Medrol.

We recommended to the patient that we need MRI imaging of the brain and the spine to review in order to confirm the diagnosis of multiple sclerosis. We are also going to set up a spinal tap under fluoroscopic guidance for MS panel including CSF protein, glucose and cell count and oligoclonal bands and IgG index.

Also, will get MRI of the lumbar spine with and without contrast to look for any abnormal nerve root enhancement that can explain his foot drop. We will also get EMG study for the lower extremity to look for any large fiber neuropathy, including peroneal neuropathy.

Adeyo.a, Umar (MRN C3138269)                                                                Page 6 of 6
**H&P signed by Sriwastava, Shitiz, MD at 01/31/20 1958  (continued)**

Get blood work including B12, ANA, TSH, B1, ESR, GAD antibodies, B1 level. We are going to give him a script for physical therapy, a DME script for an ankle brace and we will get release of medical information sign medical information to get his prior MRI imaging scan that was done at an outside facility. We are going to give him a short course of IV Solu-Medrol from 3 days to 5 days after reviewing the MRI images on the disc and we will discuss the disease-modifying therapy once we confirm his diagnosis.

Total face-to-face time by staff: 70 minutes. Greater than 50% of that time (45 minutes) was spent on counseling/coordination of care regarding:demyelinating disease,neurological manifestation of MS,MRI imaging ,EMG/NCS,CSF study,lab test.
*Shitiz Sriwastava, MD 1/27/2020, 1300*

## Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | |
|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: M | Race: | BLACK |
| Scanned Date: | 02/10/2020 15:20 EST | | Facility: | CUM |

Reviewed by Moubarek, Mohamed S. MD, CD on 03/03/2020 12:16.

# Exhibit 13

# Bureau of Prisons
# Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M    Race: BLACK | Facility: | CUM |
| Note Date: | 02/04/2020 15:11 | Provider: | Gera, Tom PA-C | Unit: | P01 |

Review Note - Orders encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**        **Provider:** Gera, Tom PA-C
    add recommendations from Neurologist.

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-TSH | One Time | 02/06/2020 00:00 | Routine |
| Lab Tests-E-ESR | | | |
| Lab Tests-V-Vitamin B1 | | | |
| Lab Tests-V-Vitamin B12 | | | |
| Lab Tests-A-Antinuclear antibody (ANA) | | | |

    **Additional Information:**
        GAD antibodies
    **Labs requested to be reviewed by:**        Moubarek, Mohamed S. MD, CD

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Physical Therapy | 03/04/2020 | 03/04/2020 | Routine | No | |

    **Subtype:**
        Rehab 1st
    **Reason for Request:**

    Request Physical Therapy for observed foot drop experienced by the patient over the past 2 years. Request for PT is made by previously consulted Neurologist.

    Pt is a 50 man that has been experiencing symptoms involving bilateral LE weakness with bilateral foot drop, tunnel vision, dizziness and Lhermitte sign. MRI findings in 2018 = numerous hyperintense lesion in supratentorial distribution, minimal degenerative changes L5-S1.
    Physical exam demonstrates no LE atrophy, no weakness of proximal muscle groups involving LEs and 3/5 strength bilateral distal muscles of LEs.
    The concern is that the pt has a pinched nerve causing foot drop.

| Radiology | 02/04/2021 | 02/04/2021 | Routine | No | |
|---|---|---|---|---|---|

    **Subtype:**
        (WMRMC) Diagnostic Center
    **Reason for Request:**

    Request spinal tap under fluoroscopic guidance for MS panel including oligoclonal bands, CSP protenin, and cell count and oligoclonal bands and IgG index per the request of previously consulted Neurologist.
    Pt is a 50 man that has been experiencing symptoms involving bilateral LE weakness with bilateral foot drop, tunnel vision, dizziness and Lhermitte sign. MRI findings in 2018 = numerous hyperintense lesion in supratentorial distribution, minimal degenerative changes L5-S1.
    Physical exam demonstrates no LE atrophy, no weakness of proximal muscle groups involving LEs and 3/5 strength bilateral distal muscles of LEs.
    Neurologist recommends further testing prior to a formal dx of MS can be made.

**Schedule:**

| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
|---|---|---|---|---|---|
| Date of Birth: | 01/09/1970 | Sex: M | Race: BLACK | Facility: | CUM |
| Note Date: | 02/04/2020 15:11 | Provider: | Gera, Tom PA-C | Unit: | P01 |

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Consultation | 02/06/2020 00:00 | MLP 03 |

Review Neurologist request for EMG of lumbar spine, MRI for lumbar spine, PT, spinal tap

follow up c/o dizziness and tunnel vision for which he states Prednisone provided no relief

1-27-20 Per Control inmate returned at 1311 from WVU Neurology consult. No paperwork returned with inmate at this time

| Equipment Issue | 02/06/2020 00:00 | Nurse 02 |
|---|---|---|

issue AFO for R foot

**Copay Required:** No        **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Gera, Tom PA-C on 02/04/2020 15:41



# Bureau of Prisons
# Health Services
# Consultation Request

| Inmate Name: ADEYOLA, UMAR | Reg #: 11261-055 | Complex: CUM |
|---|---|---|
| Date of Birth:    01/09/1970 | Sex:    M | |

**Consultation/Procedure Requested:**    Radiology

**Subtype:**    (WMRMC) Diagnostic Center

**Priority:** Routine

**Target Date:** 02/04/2021

**Reason for Request:**

Request spinal tap under fluoroscopic guidance for MS panel including oligoclocnal bands, CSP protenin, and cell count and oligoclonal bands and IgG index per the request of previously consulted Neurologist.

Pt is a 50 man that has been experiencing symptoms involving bilateral LE weakness with bilateral foot drop, tunnel vision, dizziness and Lhermitte sign. MRI findings in 2018 = numerous hyperintense lesion in supratentorial distribution, minimal degenerative changes L5-S1.

Physical exam demonstrates no LE atrophy, no weakness of proximal muscle groups involving LEs and 3/5 strength bilateral distal muscles of LEs.

Neurologist recommends further testing prior to a formal dx of MS can be made.

**Medications (As of 02/06/2020)**

Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT Exp: 11/27/2020 SIG: Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call)

Baclofen 10 MG Tab Exp: 05/31/2020 SIG: ***crush/empty*** Take one tablet (10 MG) by mouth twice daily **non-formulary approved until: 07/16/21 ***pill line***

Budesonide/Formoterol 160-4.5 MCG/ACT 10.2 GM Exp: 12/02/2020 SIG: Inhale 2 puffs by mouth twice daily **rinse mouth after use**

**Allergies (As of 02/06/2020)**

No Known Allergies

**Health Problems (As of 02/06/2020)**

Scoliosis, Multiple sclerosis, Withdrawal from substance use, Alcohol Use Disorder: Moderate, Opioid Use Disorder: Moderate, Asthma, Overweight, Dizziness and giddiness, Other peripheral vertigo

**Inmate Requires Translator:**  No             **Language:**

**Additional Records Required:**

**Comments:**

**Requested By:**   Gera, Tom PA-C

**Ordered Date:**    02/04/2020 15:11

**Scheduled Target Date:** 02/04/2021 00:00

**Level of Care:**    Medically Necessary - Non-Emergent

# Bureau of Prisons
# Health Services
# Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M | Race: | BLACK |
| Scanned Date: | 03/12/2020 15:46 EST | | | Facility: | CUM |

Reviewed by Moubarek, Mohamed S. MD, CD on 03/24/2020 21:47.

# Exhibit 14

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M   Race: BLACK | Facility: | CUM |
| Note Date: | 04/15/2020 07:56 | Provider: | Gera, Tom PA-C | Unit: | P01 |

Admin Note - Chart Review encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**         **Provider:** Gera, Tom PA-C

Phone conversation with previously consulted Neurologist resulted in Neurologist requesting repeat MRI despite review of prior MRIs prior to a dx of MS being given to pt.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Radiology | 05/20/2020 | 05/20/2020 | Routine | No | |

Subtype:

MRI, Routine

**Reason for Request:**

Request MRI of brain and entire spine per request of previously consulted Neurologist for confirmation of diagnosis of Multiple Sclerosis.

Pt is a 50 man that has been experiencing symptoms involving bilateral LE weakness with bilateral foot drop, tunnel vision, dizziness and Lhermitte sign. MRI findings in 2018 = numerous hyperintense lesion in supratentorial distribution, minimal degenerative changes L5-S1.

Physical exam demonstrates no LE atrophy, no weakness of proximal muscle groups involving LEs and 3/5 strength bilateral distal muscles of LEs.

Neurologist recommends further testing prior to a formal dx of MS can be made.

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:**   No

Completed by Gera, Tom PA-C on 04/27/2020 08:02

# Exhibit 15

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | ADEYOLA, UMAR | | | | Reg #: | 11261-055 |
| Date of Birth: | 01/09/1970 | Sex: | M | Race: BLACK | Facility: | CUM |
| Note Date: | 07/02/2020 13:58 | Provider: | | Gera, Tom PA-C | Unit: | P01 |

Admin Note - Chart Review encounter performed at Health Services.
**Administrative Notes:**

    ADMINISTRATIVE NOTE   1       Provider:   Gera, Tom PA-C

    Phoned Neurologist this date regarding review of MRI images sent to his office. Acknowledgment of receipt of MRI discs due to confirmation of certified mail containing discs signed for last week by the physician. Left message for Neurologist to call back concerning review of MRI discs.

**Copay Required:** No        **Cosign Required:** No
**Telephone/Verbal Order:**   No

Completed by Gera, Tom PA-C on 07/02/2020 14:02

# Exhibit 16

NITRITE

Value **Negative**
**Standard Range** Negative

LEUKOCYTES
WBCs/uL

Value **Negative**
**Standard Range** Negative

APPEARANCE

Value **Clear**
**Standard Range** Clear

COLOR

Value **Normal (Yellow)**
Standard Range Normal (Y...

## CBC WITH DIFF



| WBC x10^3/uL | 6.0 |
| --- | --- |
| | 3.7    11.0 |

| RBC x10^6/uL | 5.35 |
| --- | --- |
| | 4.50    6.10 |

| HGB g/dL | 15.3 |
| --- | --- |
| | 13.4    17.5 |

| HCT % | 46.7 |
| --- | --- |
| | 38.9    52.0 |

| MCV fL | 87.3 |
| --- | --- |
| | 78.0    100.0 |

| MCH pg | 28.6 |
| --- | --- |
| | 26.0    32.0 |

| MCHC g/dL | 32.8 |
| --- | --- |
| | 31.0    35.5 |

| RDW-CV % | **14.0** 11.5          15.5 |
| PLATELET COUNT x10^3/uL | **198** 150          400 |
| MPV fL | **9.8** 8.7          12.5 |
| PMN'S % | Value 62 |
| LYMPHOCYTES % | Value 24 |

| | |
|---|---|
| MONOCYTES % | Value 9 |
| EOSINOPHIL % | Value 3 |
| BASOPHILS % | Value 1 |

| | | |
|---|---|---|
| PMN ABS x10^3/uL | **3.79** | |
| | 1.50 | 7.70 |

| | | |
|---|---|---|
| LYMPHS ABS x10^3/uL | **1.43** | |
| | 1.00 | 4.80 |

| MONOS ABS x10^3/uL | **0.53** |
| --- | --- |
| | 0.20          1.10 |

| EOS ABS x10^3/uL | |
| --- | --- |
| | Value **0.17** Standard Range <=0.50 |

| BASOS ABS x10^3/uL | |
| --- | --- |
| | Value **<0.10** Standard Range <=0.20 |

| IMMATURE GRANULOCYTE % % | **1** |
| --- | --- |
| | 0            1 |

| IMMATURE GRANULOCYTE # x10^3/uL | |
| --- | --- |
| | Value **<0.10** Standard Range <0.10 |

# Exhibit 17

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Adm...strative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Adeyola, Umar     11261055     P     Cumberland Camp
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL**

I am appealing Butner's LCSI failure to respond to Remedy 1008775-F1 regarding their Medical Care regarding Multiple Sclerosis. BoP's refusal to provide MS treatment has caused significant pain, damage to my central nervous system and suffering

DATE     **Received**     SIGNATURE OF REQUESTER

**Part B—RESPONSE**

JUN 16 2020

Mid-Atlantic Regional Office

OCT 27 2020

RECEIVED
AUG 21 2020
By MNR

DATE

**REGIONAL DIRECTOR**

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

BP-230(13)

# Exhibit 18

Adeyola, Umar        Scan on 1/9/2020 by Martin, Alyssa Kathleen of Referral Notes

Mar. 7. 2019 12:05PM                                        No. 3749    P. 4/44

---

### RWJ Hamilton
### Patient Results

| All results performed dates from 04-03-2017 | | | | |
|---|---|---|---|---|
| **ADEYOLA, UMAR** | HMOP Outpatient Diagnostics | 49y | M | Mangal, Rakesh |
| DSC | | Jan-09-1970 | | 58-78-55 / 072848312 |

---

| 04-03-2017 16:16 | Spine Lumbar Complete | | 1 or more Final Results Received |
|---|---|---|---|

Spine Lumbar Complete                                          Final        Updated
DIAGNOSTIC IMAGING

One Hamilton Health Place
Hamilton, NJ 08691-3599
609-584-8611
Radiology and Diagnostic Imaging

### FINAL REPORT

DR RAKESH MANGAL
268 ACADEMY ST
HIGHTSTOWN, NJ 08520 Name:        ADEYOLA, UMAR
MRN:     587855
SEX:     M
DOB:     01/09/1970
Visit#   072848312
Patient Type: OUTPATIENT DIAGNOSTICS        Req. Dept.:    RWJMI
DATE OF EXAM: 04/03/2017 16:16
EXAM NAME: SPINE LUMBOSAC COMP W OBLIQUE
Reason for Exam: r/o low back pain
EXAM CODE: 42400059

ACCESSION : 3406269

Lumbar spine 5 views

HISTORY:
Chronic low back pain for 2 months. No trauma.

COMMENTS/IMPRESSION:
Prior exam: None available.

There is a normal lumbar lordosis. No acute compression fracture or spondylolisthesis. Normal mineralization. No
significant degenerative changes.

Workstation ID :RWJ-RAIREAD11
Electronically Signed by: SANDIP NAYEENaNO4/03/2017 04:24:03 PM

Signed by Sandip Nayee at 04/03/2017 04:24:03 PM
<Ramsoft Platform>

*Thomas Gera PA-C*
*FCI Cumberland*

Requested By: Kuklish, Lindsey (Remote Chart
Reviewer)
03-07-2019 11:51

Printed from: HMDpt HIM.- Smartlink_SDS1

Page: 2 of 4

*12/16/19*

Adeyola, Umar     Scan on 1/9/2020 by Martin, Alyssa Kathleen of Referral Notes

---

Mar. 7. 2019 12:05PM     No. 3749   P. 3/44

**RWJ Hamilton**
**Patient Results**

| All results performed dates from 04-03-2017 | | | | |
|---|---|---|---|---|
| ADEYOLA, UMAR | HMOP Outpatient Diagnostics | 49y | M | Mangal, Rakesh |
| DSC | | Jan-09-1970 | | 58-78-55 / 072848312 |

| 04-03-2017 16:16 | Spine Lumbar Complete | | | 1 or more Final Results Received |
|---|---|---|---|---|

Criteria for selection:

*Adkins, FNP-C*
*3/11/19*

LSCI BUTNER

11261-055

# Exhibit 19



| | | | | |
|---|---|---|---|---|
| Bedminster | Forked River | Monroe | Somerset | **732.390.0033** |
| Bridgewater | Freehold | Neptune | Teaneck | |
| Cherry Hill | Hillsborough | New Brunswick | Tinton Falls | Online Scheduling: |
| East Brunswick | Linden | Nutley | Warren | UniversityRadiology.com |
| Edison | Maplewood | Oakhurst | Wall | |
| Elizabeth | Metuchen | Point Pleasant | | |

Name: UMAR ADEYOLA

MRN: 3348315

DOB: 01/09/1970 KONSTANTIN BALASHOV MD

Phone: 716/335-5929 RWJ UNIV NEUROSURG ASSOC

Exam Date: 10/26/2020 10 PLUM ST 5TH FL

Location: FREEHOLD NEW BRUNSWICK, NJ 08903

EXAM: MR LUMBAR SPINE WITHOUT CONTRAST

CLINICAL INDICATION: Unsteady gait, Multiple sclerosis.

TECHNIQUE: MRI of the lumbar spine was performed without intravenous contrast.

COMPARISON: MRI lumbar spine 7/27/2017..

FINDINGS:

Numbering: Last fully formed disc space is designated L5-S1.

Bones: Normal vertebral body heights. Levoconvex scoliosis of the lumbar spine. Normal sagittal alignment. Marrow signal is within normal limits.

Discs: Mild disk desiccation at L3-L4 and L5-S1.

Spinal Cord: Conus is normal in signal and terminates at the upper L2 level.

T12-L1: No disc bulge or herniation. No central or foraminal stenosis.

**Patient:** ADEYOLA, UMAR **DOB:** 1/9/1970 **Exam Date:** 10/26/2020 **Acc No:** 23788615 **MRN:** 3348315



| | | | | |
|---|---|---|---|---|
| Bedminster | Forked River | Monroe | Somerset | **732.390.0033** |
| Bridgewater | Freehold | Neptune | Teaneck | Online Scheduling: |
| Cherry Hill | Hillsborough | New Brunswick | Tinton Falls | UniversityRadiology.com |
| East Brunswick | Linden | Nutley | Warren | |
| Edison | Maplewood | Oakhurst | Wall | |
| Elizabeth | Metuchen | Point Pleasant | | |

L1-L2: No disc bulge or herniation. No central or foraminal stenosis.

L2-L3: Mild bilateral facet hypertrophy. No disc bulge or herniation. No central or foraminal stenosis.

L3-L4: Minimal disk bulge with a new focal superimposed right paracentral disk protrusion, which displaces the descending right L4 nerve root. The spinal canal is patent. Combined with facet hypertrophy is mild right foraminal narrowing.

L4-L5: Mild/moderate bilateral facet hypertrophy. No central or foraminal stenosis.

L5-S1: Minimal disk bulge with a superimposed annular tear and right foraminal disk protrusion. The spinal canal is patent. Combined with facet hypertrophy there is mild far right and mild left foraminal narrowing. Findings are unchanged.

Other: No other significant findings.

IMPRESSION:

New right paracentral disk protrusion at L3-L4, which displaces the descending right L4 nerve root.

No change in annular tear and small right foraminal disk protrusion at L5-S1.

Thank you for the courtesy of this referral.

Electronic access to images available to referring providers online.

APPROVED BY: Payam Torrei MD 10/26/2020 3:59 PM

Medical professionals may call 732-234-7777 to speak with a radiologist.



**UNIVERSITY RADIOLOGY**
Leaders in Subspecialty Imaging

| Bedminster | Forked River | Monroe | Somerset |
| Bridgewater | Freehold | Neptune | Teaneck |
| Cherry Hill | Hillsborough | New Brunswick | Tinton Falls |
| East Brunswick | Linden | Nutley | Warren |
| Edison | Maplewood | Oakhurst | Wall |
| Elizabeth | Metuchen | Point Pleasant | |

**732.390.0033**

Online Scheduling:
UniversityRadiology.com

Name: UMAR ADEYOLA

MRN: 3348315

DOB: 01/09/1970 KONSTANTIN BALASHOV MD

Phone: 716/335-5929 UMDNJ CAB

Exam Date: 10/28/2020 125 PATERSON ST STE 6100

Location: FREEHOLD NEW BRUNSWICK, NJ 08901

EXAM: MR BRAIN WITHOUT AND WITH CONTRAST

CLINICAL INDICATION: Multiple sclerosis.

TECHNIQUE: MRI of the brain was performed before and after intravenous gadolinium administration.

IV Contrast: Dotarem (Gadoterate Meglumine), 20 mL

COMPARISON: No pertinent prior studies have been submitted for comparison.

FINDINGS:

Ventricles/Extra-axial Spaces: Mildly enlargement of the ventricles, sulci and basal cisterns particularly within the posterior fossa..

Brain Parenchyma: No acute intracranial hemorrhage. No acute territorial infarction. Multiple lesions are noted within the periventricular white matter extending into the corona radiata and centrum semiovale. Some of these are oriented perpendicular to the ventricles. A focal lesion is present within the genuine of the corpus callosum with multiple lesions located along the inferior corpus callosal body. There is involvement of both temporal lobes and left pons. A solitary lesion within the left corona radiata enhances. Many lesions within the corona radiata and centrum semiovale demonstrate reduced diffusion. No mural lesions demonstrate any surrounding vasogenic edema or mass effect.

Midline Structures: Cerebellar tonsils normal in location. Unremarkable sella.

**Patient:** ADEYOLA, UMAR **DOB:** 1/9/1970 **Exam Date:** 10/28/2020 **Acc No:** 23788637 **MRN:** 3348315



| | | | | |
|---|---|---|---|---|
| Bedminster | Forked River | Monroe | Somerset | **732.390.0033** |
| Bridgewater | Freehold | Neptune | Teaneck | |
| Cherry Hill | Hillsborough | New Brunswick | Tinton Falls | Online Scheduling: |
| East Brunswick | Linden | Nutley | Warren | UniversityRadiology.com |
| Edison | Maplewood | Oakhurst | Wall | |
| Elizabeth | Metuchen | Point Pleasant | | |

Flow Voids: Unremarkable.

Calvarium: Within normal limits.

Paranasal Sinuses: Clear.

Mastoids: Clear.

Visualized Orbits: Unremarkable.

Other: No other significant findings.

IMPRESSION:

Multiple lesions within the white matter and left pons some demonstrating reduced diffusion within the lesion demonstrate enhancement consistent with acute demyelinating plaques.

Thank you for the courtesy of this referral.

Electronic access to images available to referring providers online.

APPROVED BY: Alan Heideman MD 10/28/2020 2:44 PM

Medical professionals may call 732-234-7777 to speak with a radiologist.

**Umar Adeyola**
**1 Market Street**
**Camden, New York 08102**

11/11/2023

**Affidavit**

I, Umar Adeyola, being duly sworn, hereby depose and state as follows:

1) I am over the age of 18 and am competent to make this affidavit.

2) I am making this affidavit to express my concerns and complaints regarding the medical treatment I received from employees of Cumberland Satellite Federal (CSF) Camp and the University of West Virginia (UWV) employees.

3) I have submitted numerous sick-call and accident reports detailing my deteriorating health condition, which includes falls, pain, tremors, difficulties walking, and breathing problems arising from worsening multiple sclerosis symptoms.

4) CSF contacted UWV and arranged for me to be seen by Dr. Dr. Srivastava, a neurologist, for a Multiple Sclerosis assessment in January 2020.

5) During my consultation with Dr. Srivastava, I informed him that I had been diagnosed with Primary Progressive Multiple Sclerosis by Dr. Balashov from Rutgers University Multiple

Sclerosis Center in January 2019. Dr. Srivastava expressed doubt about my diagnosis, stating that PPMS is a rare condition.

6) I signed a release of medical information for Dr. Srivastava to review my medical history and asked if CSF had supplied him with my last brain, thoracic, and cervical radiological charts and findings. Dr. Srivastava responded that he did not trust radiologic findings and planned to schedule new MRIs.

7) Subsequently, CSF and Dr. Srivastava coordinated my return to West Virginia for further testing. Upon my arrival at the hospital, I was informed that I was scheduled to undergo a spinal puncture procedure, rather than the brain, thoracic, and cervical MRIs I had expected. I refused invasive procedures until provided with medical justification by Drs. Srivastav and Moubarak from CSF.

8) Upon my return to CSF, I was informed that Dr. Srivastava had been provided with my medical forms, but he did not contact CSF to provide an analysis of my MRIs.

9) To address this issue, I sent Dr. Srivastava a certified letter through USPS on or about 03/12/2020, detailing my MRI profiles from Robert Woods Hospital (July 2018) and the Bureau of Prison (April 2019), along with clinical profiling post-hospitalization. I implored him to respond to my letter as my treating doctor, but he did not.

10) Dr. Srivastava's failure to respond to my requests and the apparent unilateral severance of the patient-doctor relationship during a critical juncture led to a lack of continuing medical treatment for my severe and chronic medical needs.

11) I promptly submitted an administrative grievance with CSF, expressing my concerns about not receiving adequate medical attention for my Multiple Sclerosis (MS) condition.

12) I received a response to my BP 9 remedy on or about 10/15/2020 by email from BUX/Exec Assistant from BUX/Exec.Assistant~@bop.gov, which provided me with a copy of their response to my BP 9.

13) Despite my efforts to seek resolution, including the submission of a BP-9 and BP-10 to the Bureau of Prisons Mid-Atlantic Region, I did not receive timely responses, leading to a breakdown of due process and a deterioration of my health.

14) On April 21, 2023, I sought assistance in obtaining evidence of delivery for all the certified letters I sent as part of the administrative remedies to the Bureau of Prisons (BOP), Dr. Srivastava, and UWV to address the severe neurological pain and suffering I experienced. However, the trial court denied my request for discovery assistance, as a Pro Se litigant, as documented in Docket 46 of the CIVIL DOCKET FOR CASE #: 1:22-cv-00781-TDC.

15) The availability of this discovery is of utmost importance for fact-finders to independently verify the submission of administrative remedies to the BOP, a vital aspect of my case."

16) USPS typically retains mailing information for up to two years, and beyond that period, a court order may be required to obtain such information."

17) Despite my efforts to seek resolution, including the submission of a BP-9 and BP-10 to the Bureau of Prisons Mid-Atlantic Region, the significant delays in response to my grievances resulted in a breakdown of due process and a deterioration of my health.

18) I am currently suffering from permanent nerve damage that necessitates constant in-home long-term services and support, as I am at risk of nursing home placement due to the failures of Cumberland and UWV to provide appropriate treatment and neurological surveillance for my MS condition.

19) Dr. Srivastava's decision to abandon me as a patient during a critical medical juncture without reason or sufficient notice was a culpable dereliction of the duty owed to me as my treating physician.

20) Furthermore, the BOP's failure to promptly secure another neurologist to treat my Multiple Sclerosis and the lack of adequate disease progression surveillance allowed damages to persist for over six months.

I declare under penalty of perjury that the foregoing is true and correct.

Umar Adeyola

X _____

Nov 13 ~~2022~~
2023

11/13/2023

Pedro J. Acevedo

Notary Public

6/28/26



LOPE TO THE RIGHT
D AT DOTTED LINE
MAIL®

6052 7745

Retail

U.S. POSTAGE PAID
PM
CAMDEN, NJ 08102
NOV 13, 2023

$14.90

R2305M144799-23

23219

RDC 03

UNITED STATES
POSTAL SERVICE®

Appeals
f

19

RECEIVED
U.S. MARSHALS

PRIORITY
★ MAIL ★

VISIT US AT USPS.COM®
Label 106A, July 2013

UNITED STATES
POSTAL SERVICE®

This product is for use with Priority Mail®
Misuse may be a violation of federal law.
This label is not for resale.

This product is for use with Priority Mail®
Misuse may be a violation of federal law.
This label is not for resale.

UNITED STATES
POSTAL SERVICE®